MISTLETOE EXPRESS SERVICE, Inc., a Corporation, Plaintiff in Error,

v.

William C. CULP, Defendant in Error.

No. 37987.

Supreme Court of Oklahoma.

Dec. 8, 1959.

Rehearing Denied May 17, 1960.

Second Petition for Rehearing Denied June 14, 1960.

Hudson, Hudson, Wheaton & Kyle, Tulsa, for plaintiff in error.

Luttrell & Luttrell, Norman, Arthurs, Blackstock & McMillan, Bristow, Thomas J. Horsley, Hicks Epton, Wewoka, for defendant in error.

JOHNSON, Justice.

William C. Culp, d/b/a Culp Music Company, operated a music and appliance store in the city of Norman. John W. Wolfe was the commission agent for and in charge of the office of the Mistletoe Express Service, Inc. in the city of Norman, which company operated an express business carrying freight between cities and towns within the State of Oklahoma.

Some time after Mistletoe, through its commission agent Wolfe, had delivered a telvision tube to him, Culp advised Wolfe that it had been damaged in transit. A claim for the damage was prepared. Wolfe picked up the tube and claim, and both were sent to the Oklahoma City office of Mistletoe. A short time later Mistletoe advised Wolfe that the claim was being denied and returned the tube to its Norman office with directions that Wolfe redeliver it to Culp.

Wolfe delivered the tube to Culp, telling him that his claim had been denied by Mistletoe. Culp advised him, before two of Culp's employees, that he would not accept the tube. Wolfe's temper flared. Words were exchanged, and as Culp turned his head toward Wolfe, without warning, Wolfe struck Culp in the face with his left fist with such force that he was knocked several feet back and to the floor, rendered unconscious for a period of time, several teeth were knocked out and others were loosened and his lip badly cut.

Culp brought this action for damages for the resulting personal injuries suffered against the Mistletoe and Wolfe. He al-

leged that Wolfe was the agent, servant and employee of Mistletoe, and that by reason thereof it was liable for the consequences of Wolfe's act. In addition, he alleged that Mistletoe was negligent in hiring Wolfe, who was known to be a hot-tempered individual, quarrelsome, pugilistic and dangerous. He further alleged that Mistletoe ratified the act of Wolfe by retaining him as agent after the attack on plaintiff became public knowledge.

Mistletoe answered by way of general denial, then alleged that Wolfe was an independent contractor under oral contract of employment, and it was not liable for his acts; that even if he were its employee, the assault upon Culp was not within the scope contemplated by his employment.

The trial resulted in a jury verdict in favor of the plaintiff and against both defendants upon which the judgment was entered. In due time, motion for new trial was filed by Mistletoe and overruled, and the appeal was perfected to this court by it.

Mistletoe does not question the nature, extent and permanency of the plaintiff's injuries. Neither does it contend that the verdict was excessive. The correctness of the verdict and judgment in those respects will be presumed.

Mistletoe first contends that the trial court erred in overruling its demurrer to the evidence and motion for directed verdict for the reason that the undisputed evidence shows Wolfe was an independent contractor, it having reserved no rights nor did it ever control the physical details of the work to be done by Wolfe.

An independent contractor is defined as one who engages to perform a certain service for another, according to his own method and manner, free from control and direction of his employer in all matters connected with the performance of the service, except as to the result of the service. However, as a general rule, the line of demarcation between an independent contractor and a servant is not clearly drawn, but the question of such relationship

must be determined upon the facts peculiar to each case, and if the evidence is such that the minds of reasonable men may differ as to whether the relationship established was that of contractee and independent contractor, or master and servant, the determination of such relationship is for the jury under proper instructions by the court. Ellis & Lewis, Inc. v. Trimble, 177 Okl. 5, 57 P.2d 244; Keith v. Mid-Continent Petroleum Corp., Okl., 272 P.2d 371; Cook v. Knox, Okl., 273 P.2d 865; Continental Oil Co. v. Elias, Okl., 307 P.2d 849.

From the above definition and cited authorities, we find that in the determination of whether the relationship between Wolfe and Mistletoe was that of a servant or independent contractor the many elements to be considered are: (1) the nature of the contract between the parties, whether written or oral; (2) the degree of control which by the agreement the employer may exercise on the details of the work or the independence enjoyed by the contractor or agent; (3) whether or not the one employed is engaged in a distinct occupation or business and whether he carries on such occupation or business for others; (4) whether the employer or the workman supplies the instrumentalities, tools and the place of work for the person doing the work; (5) the length of time for which the person is employed; (6) the method of payment, whether by the month or by the job; (7) whether or not the work is a part of the regular business of the employer; (8) whether or not the parties believe they are creating the relationship of master and servant; and (9) the right of either to terminate the relationship without liability.

The evidence discloses that the agent, Wolfe, was employed under oral contract by Mistletoe as a commission agent in charge of its Norman office; that he was subject to the general control of the company supervision at all times, even to the extent of directing him to make specific pickups of freight at off hours; that Mistletoe rented the Norman office, paid the monthly rental and furnished it; that

Mistletoe sent the lease agreement to the agent Wolfe and directed him to take it to the lessor for signature; that the phone was in its name and it paid therefor; that the agent owned, operated and maintained the delivery trucks, each of which had Mistletoe's name painted thereon; that it was the agent's duty to pick up and deliver all freight in the city of Norman shipped by Mistletoe; that agent Wolfe worked full time for Mistletoe, and his trucks were used for nothing else; that his duties were required by and were an integral part of Mistletoe's business; that he was employed subject to the will of either, each being able to terminate the employment on two weeks' notice; that his monthly pay was ten percent of the gross funds received by Mistletoe from the business done in Norman; that he was given an employee number, social security and income tax was withheld from his salary, and he was required to attend regular employee meetings; that he did not belong to the employees' union and did not participate in the retirement program; that the actual detail of making the deliveries was under his direction; that he was required to have two employees in the Norman office, a secretary and a truck driver, Mistletoe suggesting the amount of salary for each; that he was paid a subsidy of $375 per month with which to pay such salaries; that he considered himself an employee subject to the direction of Mistletoe with some leeway as to the carrying on of the actual details; that Mistletoe considered him a commission agent subject to its general control through the supervisors with the actual details to be worked out by him; that all advertising by Mistletoe indicated that the Norman branch office was operated by it through its agents, servants and employees; that when articles arrived at the Norman office it was his duty to deliver them to the person or firm designated.

Assuming that even though Mistletoe was a common carrier under the statutes 47 O.S.1951 § 170, and could perform its duties to the public through an independent contractor, still, when we consider the evidence in the light of the various elements to be considered in determining whether or not one is a servant or an independent contractor, it is such that the minds of reasonable men may differ as to the actual relationship between the parties. It was, therefore, proper for the trial court to submit the question thereof to the jury for determination under proper instructions. Continental Oil Co. v. Elias, supra; Cook v. Knox, supra; Keith v. Mid-Continent Petr. Co., supra, and Ellis & Lewis, Inc. v. Trimble, supra.

The instructions given correctly told the jury when one is an independent contractor. The evidence clearly indicated the various elements to be considered in reaching a determination of the relationship. The effect of the verdict of the jury was that the agent, Wolfe, was an employee and not an independent contractor. The evidence amply sustains such verdict. See cases cited, supra.

Contrary to the defendant's argument, the result reached is in complete accord with and is sustained by the cases of Atlas Life Ins. Co. of Tulsa v. Foraker, 196 Okl. 389, 165 P.2d 323; Sawin v. Nease, 186 Okl. 195, 97 P.2d 27, and the other cases cited and relied upon by Mistletoe.

It is next contended that the trial court erred in instructing the jury on actionable negligence.

■ The petition contained allegations that Mistletoe was negligent in hiring Wolfe, a quarrelsome, hot-tempered and antagonistic person, which fact was known to Mistletoe, or by the exercise of ordinary care could have been known by it at the time of Wolfe's employment, and that such negligence of Mistletoe was the proximate cause of plaintiff's injuries.

There was evidence that Wolfe was a quarrelsome, hot-tempered, antagonistic person, which was known to Mistletoe or which, by the exercise of ordinary care, could have been known by it at the time of and during his employment. Mistletoe could not close its eyes to the fact that Wolfe had before and during his employment "lots of fights," and earned the nick-

name of "slugger." It could not discharge its duty to the public with whom Wolfe necessarily dealt by admonishing him after one fight to "watch his temper," and later he "was going to have to stop that stuff." There was evidence that Wolfe as Mistletoe's agent was directed by Mistletoe to deliver the television tube to the plaintiff and notify him that his claim for damages had been denied. The plaintiff had previously refused to accept the television tube because it was damaged in transit and had filed a claim for the damaged tube with the company; that when plaintiff refused to accept the damaged television tube the second time that Wolfe became angry and committed an assault and battery upon the plaintiff in the manner hereinbefore stated. There was evidence of Mistletoe's negligence in engaging and retention of an unfit employee as found by the jury.

Thus there was no error in submitting the question of actionable negligence to the jury.

We have held without exception that if the instructions, taken together and considered as a whole, fairly present the law applicable to the issues raised by the pleadings on which competent evidence has been introduced and adequately cover the phases of the law presented by the requested instructions, they are sufficient, and there was no error in refusing requested instructions. Hudson v. Blanchard, Okl., 294 P.2d 554; Atchison, T. & S. F. Ry. Co. v. Raleigh, 194 Okl. 589, 154 P.2d 62. Examination of the instructions given in the light of such rule clearly discloses that the jury was fairly advised of the law relative to those issues upon which defendant relied, and adequately covered the phases of the law presented by the requested instructions. The instructions, when considered as a whole and construed together, fairly submitted the issues to the jury. Tulsa City Lines, Inc., v. Geiger, Okl., 275 P.2d 325, and cited cases. It follows that there is no merit in Mistletoe's contention that the trial court erred in refusing to give its requested instruction.

Mistletoe contends that the trial court erred in giving Instructions 6 and 7 in that it is the general rule that in order to hold one responsible for the tort of another it must be made to appear by competent evidence not only that the relation of principal and agent existed, but that the tortious act was committed in the course of the employment, and that such instructions have the effect of instructing a verdict for plaintiff.

Primarily, this contention is predicated upon our holding in the case of Hill v. McQueen, 204 Okl. 394, 230 P.2d 483, 22 A.L.R.2d 1220.

That case (Hill v. McQueen) was one where the plaintiff was the debtor of defendant copartnership and brought an action for assault and battery allegedly committed by defendant's general manager of the copartnership. Except for the authority to collect debts as an incident of his office, the only authority of the general manager in relation to the plaintiff was the direction by the president of the copartnership to inquire of the plaintiff about the indebtedness. The judgment was awarded against both defendants, and the copartnership appealed on the ground that the general manager was acting without the scope of his authority in committing the assault. The general manager appealed on the ground that the trial court erred in summarily denying a request of the jury that depositions in evidence be sent to the jury room.

This court, on appeal, held that the trial court erred in overruling the motion of the copartnership for a directed verdict since it was clear that from the facts the general manager in committing the assault was acting without the scope of his employment, and also held that the trial court erred in summarily denying the request of the jury that depositions in evidence be sent to the jury room, and reversed the judgment and remanded the case for further proceedings not inconsistent with the views expressed in the opinion. This case and others of similar import cited by defendant

are inapplicable to the factual situation in the instant case.

It is apparent from a casual reading of the McQueen case, supra, this court did not intend to announce a rule of law applicable to every assault by an employee. The facts in the case at bar distinguish it from the McQueen case in several important particulars. In the first place, the undisputed testimony presented to the jury shows that Mistletoe was expecting bad feelings about its return of the tube; and Mistletoe knowing this deliberately sent Wolfe with specific instructions into a situation which, because of his known violent nature, was almost certain to trigger his temper and cause the very kind of result produced in this case. The case at bar is further clearly distinguishable from the McQueen case under its clear implications. In the case at bar the jury had before it ample evidence of the actions and conduct of Wolfe. Wolfe plead guilty to the wanton, brutal and crippling assault on the plaintiff and paid a fine therefor. Mistletoe investigated the accident and must have learned what the public record affirmatively showed. Through its investigation it must have learned and known the facts by which Wolfe's violent temper and his reputation as a pugilist earned for him the nickname of "slugger."

A further vital distinction between the case at bar and the McQueen case (and others cited by defendant) is that Mistletoe was a common carrier of freight, operating under a certificate of convenience and necessity from the Corporation Commission; it could not lawfully delegate the performance of any of its functions to an independent contractor; Mistletoe's relationship to Wolfe was by law that of master and servant. See 47 O.S.1951 § 170, supra. As a common carrier of property Mistletoe's duties were fixed by law. Mistletoe was required to deliver freight to the consignee at the place to which it is addressed in the manner usual at that place. 13 O.S.1951 §§ 65 and 66. The consignee was not free to select the person who would deliver the freight to him; the plaintiff did not select Mistletoe as a carrier of his freight. His contact with Mistletoe, under the statute, Sec. 170, supra, was necessarily through Wolfe, Mistletoe's agent in that area. The delivery of the television tube was not only in the general scope of Wolfe's employment but was being delivered at the specific directions and under individual positive orders; the assault and battery was committed on plaintiff in the course of his employment and while following the specific instructions of his superior. The law under the circumstances of the case at bar holds the recipient of special powers and privileges (such as common carriers) to strict accountability in the performance thereof.

"It is well-settled law that an employer who, by reason of his calling or the business in which he is engaged, owes special legal duties and obligations to the public or to those with whom there exists some contractual relation cannot shirk or evade such special duties and obligations by committing its performance to another; he is bound absolutely to perform the obligation, and he is liable for failure to do so in any respect whereby injury results to others, whether such failure results from negligence or from the wilful, wanton or criminal conduct of the employee or agent to whom the duty has been committed. Being bound to do the act or perform the duty, if he does it by another the employer is treated as having done it himself." 35 Am. Jur. (Master and Servant, Sec. 549) 980.

"An employer who owes some special legal duty to the public may be held liable for an assault committed by an employee to whom he commits the performance of such duty, without regard to whether such assault was within the line of the employee's duties * * *." 35 Am.Jur. (Master and Servant, Sec. 574) 1007.

In effect, Instructions 6 and 7, when considered with the instructions as a whole, presented the question as to whether Wolfe

committed the assault upon the plaintiff in the course of his employment and as a means of carrying out the job of returning the television tube to plaintiff.

It is true that the liability of the employer for damages resulting from injuries suffered by an invitee when assaulted by an employee or agent while upon the employer's premises has been clearly recognized by this Court. Chuck's Bar v. Wallace, 198 Okl. 152, 176 P.2d 484; Ada-Konawa Bridge Co. v. Cargo, 163 Okl. 122, 21 P.2d 1.

It is equally true that the employer is not liable to third person not an invitee upon its premises for the tortious act of its employee or agent unless it is shown that such employee or agent was acting within the scope of his employment, and that the act complained of was done as a means of carrying out the job assigned to him by the employer. In other words, the fact that at the time of the assault upon the third person the employee or agent was about his employer's business is not sufficient to affix the liability for the resulting damages upon the 'employer, but it must be shown that the act complained of was done for the purpose of doing the work assigned to him. This showing, we think, was made in the instant case. Hill v. McQueen, supra. See also annotations in 34 A.L.R.2d 372.

Fleming v. Bronfin, D.C.Mun.App.1951, 80 A.2d 915, 917 (one of the cases cited in the footnotes of the A.L.R. annotation, supra, was a case wherein Gertrude I. Fleming brought action against Harry Bronfin and Hyman Bronfin, copartners, trading and doing business as the Wheeler Super-Market, to recover damages for alleged indecent assault made on the plaintiff by delivery man of defendants after he had delivered groceries to plaintiff and had been paid therefor. The Municipal Court for the District of Columbia, Civil Division, directed a verdict for defendants at conclusion of opening statement to jury by plaintiff's counsel, and plaintiff appealed. The Municipal Court of Appeals, Hood, A. J., held that defendants were not liable on ground that alleged assault was committed within scope of employment but that opening statement raised fact question whether defendants performed duty of using reasonable care in selection of a delivery man.

In the opinion of the Fleming case, supra, it is stated:

"In Restatement, Agency, § 213, Comment d, it is said that 'if a principal, without exercising due care in selection, employs a vicious person to do an act which necessarily brings him in contact with others while in the performance of a duty, he is subject to liability for harm caused by the vicious propensity.' And Restatement, Torts, § 302, Comment n, says one is liable 'where he has brought into contact with the other, or intentionally caused the other to associate himself with, a person whom the actor knows or should know to be peculiarly likely to commit intentional or reckless misconduct; the association being one which creates temptation to, or affords peculiar opportunity for, such misconduct.'

"In view of the above stated principles we think there was a clear duty on defendants to use reasonable care in the selection of a delivery man. The duties of such employee carried him into homes where likely there would be women and children alone and unprotected and it was defendants' duty to use reasonable care to select one reasonably fit to perform such duties. The opening statement construed liberally and favorably to plaintiff, as it must be, raised questions of fact whether defendants had neglected their duty and whether such neglect resulted in injury to the plaintiff. It was therefore error to direct a verdict."

The evidence adduced is ample to sustain the findings that it was Wolfe's duty to return the tube to plaintiff and advise him that his claim had been denied; that plaintiff refused to accept the tube; that in attempting to carry out such duty and force the acceptance thereof Wolfe assaulted the

plaintiff, which admittedly caused plaintiff's injuries; and that such act was done in attempting to carry out the job assigned, all of which are inherent in the verdict for the plaintiff.

The evidence reasonably sustains the verdict of the jury in all respects, and the judgment rendered thereon.

Judgment affirmed.

WILLIAMS, V. C. J., and HALLEY, BLACKBIRD, IRWIN and BERRY, JJ., concur.

DAVISON, C. J., and WELCH and JACKSON, JJ., dissent.