COOK CONSTRUCTION COMPANY and United States Fidelity and Guaranty Company, Petitioners,

v.

Vestel O. LONGCRIER and The State Industrial Court, Respondents.

No. 40923.

Supreme Court of Oklahoma.

April 6, 1965.

Rehearing Denied July 20, 1965.

Fenton, Fenton, Smith & McCaleb, Oklahoma City, for petitioners.

Gene Stipe and Clyde Stipe, McAlester, for respondents.

JACKSON, Vice Chief Justice:

This is an original proceeding to review an award of the State Industrial Court in favor of claimant, Vestel O. Longcrier, and against the Cook Construction Company. In this court, the sole proposition argued by petitioner is that "the evidence is insufficient to support the finding that respondent was an employee of Cook Construction Company". This question was specifically raised before the State Industrial Court; as a matter of fact, it was the only defense urged.

On this jurisdictional question this court will not accept as conclusive the findings of the State Industrial Court, but on review will weigh the evidence relating thereto and make its own independent finding of fact. Smith Brothers Road Construction Co. v. Palmer, Okl., 389 P.2d 495.

At the time of the accident, Longcrier was driving a truck on the Eufaula Reservoir project in Southeastern Oklahoma. He testified that the brakes on the truck failed while he was driving it down a mountain with a load of rock. He "rode" the truck for about half a mile in order to get it through the shop and parking area and then, unable to stop it, jumped from it just before it went into the river.

The only testimony in the record as to whether he was an employee of Cook was given by Longcrier himself. The truck he was driving belonged to a Marion Shipman, from whom Longcrier had leased it. Shipman owned two trucks that were being used on the Eufaula project; he drove the other one himself. On direct examination Longcrier said that he was an employee of Cook Construction Company; on cross examination he said he was an employee of Shipman. We find in these contradictory an-

swers no effort on the part of Longcrier to mislead, but merely a demonstration of the fact that he was not using the word "employee" in any technical legal sense. In lay terminology, he might have been said to be working for either party. In any event the foregoing testimony will not be binding on the courts as a legal conclusion. We therefore look to his other testimony and the lease between him and Shipman for the legal relationship between him and Cook Construction Company, or him and Shipman.

Longcrier started driving the truck on September 18, 1963. He said " * * * when I went there and went to work, I didn't know I would have to have * * * " a truck lease. The truck lease was not executed till October 5, and the accident happened on October 12th. By the terms of the lease, Shipman leased the truck to Longcrier for "as long as agreeable with both parties" and the total consideration recited was one dollar. Shipman agreed to pay all of the maintenance costs, license fees and insurance. Nothing was said in the lease about what work, if any, Longcrier would do with the truck; however, Longcrier testified that the agreement was that he was to receive "one fourth of the truck's earnings for driving it" and Shipman was to receive three fourths. As to the mechanics of handling the pay check, Longcrier said that "the whole check was made out to me, and I endorsed it and gave him (Shipman) the check, and he figured my one fourth and paid me". In reply to questions from the trial judge, Longcrier said that he didn't think Cook Construction withheld any sums from the pay check for income tax or social security.

From the indefinite term of the lease ("as long as agreeable with both parties") there can be no doubt that, in practical effect, Shipman could discharge Longcrier at will. On the Eufaula Reservoir project, Longcrier hauled sand and "rip rap" or rock; for sand hauling, payment was on a per hour basis, and for "rip rap" hauling, payment was on a "per yard mile" basis.

In answer to a series of questions, Longcrier testified in effect that employees of Cook Construction Company told him when and where to report for work, what hours to work, when and where to load his truck, whether to haul sand or "rip rap", and when and where to unload the truck. This testimony was apparently elicited for the purpose of showing the extent of the control exercised by Cook Construction Company over Longcrier. Of course directions from the company as to whether to haul sand or "rip rap" would be just as indicative of a principal-independent contractor relationship as it would be of a master-servant relationship. As to the balance of this testimony, it amounts to no more than evidence that Cook Construction Company exercised control over the work as to time and place. There is no evidence of any other kind of control exercised by the company. In this connection, see Williams v. Branum, 192 Okl. 129, 134 P.2d 352, wherein this court held:

"One who contracts with another to haul gravel at a specified amount per ton, who used his own truck and was free from a supervision, except as to place and time of hauling, *held*, Independent Contractor and not within the purview of Workmen's Compensation Act."

To the same general effect, see Imperial Paving Co. v. Russell, Okl., 308 P.2d 278; Smith Brothers Construction Company v. Palmer, supra; Maryland Casualty Co. v. State Industrial Commission, 148 Okl. 204, 298 P. 275; and Porter Construction Co. v. Burton, 156 Okl. 72, 8 P.2d 64.

From the whole record, it is apparent that: (1) when he first went to work on the Cook Construction Company job, Longcrier had no lease on the truck; (2) the lease itself is little more than a formality, reciting a consideration of only one dollar and being terminable at will by either party; however, it was sufficient, in legal effect, to constitute Longcrier the owner of the truck insofar as the company was concerned; (3) the agreement as to what

Longcrier would earn was made between him and Shipman, and not between him and Cook Construction Company; (4) payments made by the company, regardless of the basis of computation, were for "the truck's earnings" and not merely for Longcrier's wages, and the company had no control over the proportional division of the payments between Shipman and Longcrier; (5) nothing was withheld from the payments by the company for income tax or social security purposes, as would ordinarily be the case if a master-servant relationship existed; and (6) there is no evidence of any kind of control over the work exercised by the company except control as to time and place.

In Roberts Truck Service v. Singleterry, Okl., 357 P.2d 217, this court held:

"In determining whether a claimant is an employee, the controlling and decisive test is whether the employer has the right to control the physical details of the work to be done by said claimant."

As we have seen, control as to time and place is not alone sufficient to determine the question of claimant's status in his favor.

It is not contended and we do not determine whether Cook Construction Company is secondarily liable for compensation under 85 O.S.1961, § 11.

The only case cited in claimant's brief on the question of whether he was an employee is State Highway Commission v. Brewer, 196 Okl. 437, 165 P.2d 612. In that case there was competent evidence to support a finding that " * * * superior control and direction of the manner, method and time of performance of the work * * * " was retained by the employer, the State Highway Commission. There was substantially undisputed evidence in that case that claimant had been an admitted employee of the Highway Commission, driving a truck, during the first half of the month of May. As such, he would have been entitled to the protection of the Workmen's Compensation Act. About the middle of the month, and on the same job, the claimant began driving a truck belonging to one Welch, from whom the Highway Commission had "demanded and obtained" an instrument denominated a contract which referred to Welch as an independent contractor. Thereafter payment was made to the claimant through Welch. The court found:

" * * * Not an item of his labor as performed by the respondent for the State Highway Commission, the petitioner herein, prior to his discharge on or about May 15, 1944, was changed by his work with the Welch truck except that the State Highway Commission paid Welch and Welch paid the respondent. *The same direction and the same control continued as when he was an admitted employee.* * * * " (Emphasis supplied).

There is no such evidence in the case now before us. Here, the evidence is that from the first day on the job he drove the Shipman truck, receiving one fourth of "the truck's earnings for driving it" pursuant to an agreement with Shipman. In this case, the only evidence of direction and control over the work exercised by Cook Construction Company was control as to the time and place of performance. As held in former decisions, this is not a sufficient showing, on the question of control, to establish Longcrier's status as that of an employee.

■ We therefore hold that there was insufficient evidence to support the finding that Longcrier was an employee of the Cook Construction Company.

■ The relationship of employer and employee is an absolute requisite to jurisdiction of the State Industrial Court to enter an award for compensation under the Workmen's Compensation Act. Anderson et al. v. Dukes, 193 Okl. 395, 143 P.2d 800.

The award is vacated.

HALLEY, C. J., and DAVISON, IRWIN and BERRY, JJ., concur.

BLACKBIRD and WILLIAMS, JJ., dissent.

WILLIAMS, Justice (dissenting).

In the instant case, the uncontradicted evidence is that Cook Construction Company told the claimant when to report to work, where to work, what hours to work, what kind of work he was to do and what he was to haul (either sand or rip-rap). Further it is not contradicted that claimant reported at regular hours and that he never knew what he would be hauling any particular day until he reported for work. Claimant was paid directly by Cook Construction Company. Similarly, the evidence is that claimant hired himself and his leased truck to Cook Construction Company.

In the case of Woods County v. Tucker, Okl., 312 P.2d 452, Gail W. Tucker owned his truck; he was hired by the County Commissioners of Woods County to haul gravel with his truck; he was killed when his truck collided with that of another. The evidence was that deceased was hired by the hour; that he was directed "where to get the gravel, where to spread the gravel and where to dump the gravel"; that his working hours were from 8 o'clock A.M. until 4:30 P.M. with thirty minutes off for lunch.

In sustaining the award made by the State Industrial Court, we said:

"We are of the opinion and hold that under the rule announced in State Highway Commission v. Gaston, 185 Okl. 540, 94 P.2d 915, and State Highway Commission v. Brewer, 196 Okl. 437, 165 P.2d 612, there was no error in finding that decedent was an employee of Woods County.

"In State Highway Commission v. Brewer, supra, it is stated:

" 'In determining whether or not a workman is an employee or an independent contractor, this court will, in a proceeding to review an order of the State Industrial Commission, review the law and the facts independently and make its own findings as to the question of law and fact.

" 'Where compensation is paid on a per yard, per mile basis and superior control and direction of the manner, method and time of performance of the work is retained by the parties paying such compensation, the relation created is that of master and servant and not that of principal and independent contractor.' "

We held in the Woods County case that the chief element to be considered is the right to direct and control the employee.

In the present case Cook Construction Company exercised direct and superior control of the claimant as to the manner, method and time of performance of the work done by claimant and paid for by it.

There is a material difference in the facts of the instant case and those discussed hereinafter.

In the case of Williams v. Branum, 192 Okl. 129, 134 P.2d 352, 354, this Court stated:

" * * * He [claimant] also testified that he could go to work when he pleased, could take his truck from the work when he pleased, that he could hire a substitute to drive for him, and it was his duty to pay his substitute's salary from the earnings of the truck."

In the case of Maryland Casualty v. State Industrial Commission, 148 Okl. 204, 298 P. 275, 276, this Court stated:

" * * * (T)he record further shows that claimant, if he so desired, could and did himself on one occasion employ and pay another person to operate his truck while hauling the gravel, and is such as to bring it almost squarely within the facts in the case of Southern Construction Co. v. State Indus. Comm., 112 Okl. 248, 240 P. 613. *The reasons given in that case for holding the claimant to be an independent contractor* rather than an employee were: 'The company employed the claimant to deliver gravel on a

road construction job for 20 cents per ton per mile as his compensation. It appears that *the claimant* owned a truck and *was at liberty to drive the truck or employ any one under his control and direction to perform the same service in delivering the gravel.* * * *" (Emphasis ours)

In the case of Porter Constr. Co. v. Burton, 156 Okl. 72, 8 P.2d 64, we stated:

"* * * Claimant * * * was at liberty to operate the truck himself or to employ another to do so."

As noted above in the Branum, Maryland Casualty and Porter cases this Court particularly noticed that the claimant in each of such cases could hire a substitute driver. Concerning the importance that this Court attached to such fact, in the Maryland Casualty case we said: "The reasons given in that case for holding the claimant to be an independent contractor rather than an employee * * * appears that the claimant * * * was at liberty to drive the truck or employ any one under his control and direction to perform the same service in delivering the gravel". In the present case there was no evidence that claimant could hire a substitute to drive for him.

In the case of Imperial Paving Co. v. Russell, Okl., 308 P.2d 278, one *Merrick entered into a contract with Imperial* to furnish his two trucks to haul asphalt for Imperial; *Merrick hired claimant* to drive one of the trucks; *Imperial paid Merrick and he paid claimant.* In holding that claimant was Merrick's and not Imperial's employee we said:

"There is no evidence in this case tending to show that petitioner Imperial Paving Company at any time *exercised control over Merrick as to the time which he should report for work or the hours he should work or in any manner exercised control over the* employees hired by Merrick * * *." (Emphasis ours.)

Also in such opinion this Court specifically pointed out that the directions given claimant as to when to report to work and when to stop came from an employee of Merrick and not from an employee of Imperial.

In the case of Smith Brothers Constr. Co. v. Palmer, Okl., 389 P.2d 495, Harrison-Gibbs operated a service station and was in a position to have knowledge of the availability of truckers for hire; *Harrison-Gibbs entered into an agreement with Smith Brothers to secure trucks and drivers* to haul dirt and rock for Smith Brothers. Claimant owned his own truck and *Harrison-Gibbs orally hired him* to haul crushed rock for Smith Brothers. Claimant was directed by Smith Brothers where to get the rock, his truck was loaded by Smith Brothers and they told him where to dump the rock. *Smith Brothers paid Harrison-Gibbs; Harrison-Gibbs paid claimant; Harrison-Gibbs advised the claimant when he was needed* and when *he was not needed.* We held that claimant was not an employee of Smith Brothers.

In the instant case claimant testified on cross-examination as follows:

"Q: This foreman that you testified about that told you where to—where to report, who was that, do you recall?

"A: Well—as I believe I stated, sometimes, it would be the foreman, and sometimes it would be the time-keeper. And they were—about three different foremen, and I have had orders from all of them."

Claimant also testified:

"Q: Mr. Longcrier, were you employed by Cook Construction Company on or about October 12, 1936?

"A: Yes, sir.

\*　　\*　　\*　　\*　　\*　　\*

"Q: In other words, you were working for—you were working for Cook Construction Company, were you not?

"A: Yes, sir * * *"

\*　　\*　　\*　　\*　　\*　　\*

"Q: And he [Shipman] leased the truck to you, and you hired as truck and driver out to Cook Construction Company, is that right?

"A: Yes, sir * * *"

Surely the Imperial and the Smith Brothers cases are distinguishable on the facts from the present case. Let us compare the facts in those cases to those in the present case. In those cases the alleged employers did not hire the claimants. In the present case Cook hired claimant. Longcrier, not a third party, negotiated and concluded his contract of employment with Cook. Longcrier testified that "I was already driving when I knew I would have to have that [truck-lease]." Surely this mere demonstration to Cook that Longcrier was lawfully in possession of Shipman's truck did not operate to adversely affect or nullify his relationship theretofore existing as employee of Cook. See Brewer v. Bama Pie, Inc., Okl., 390 P.2d 500.

In the Imperial and Smith Brothers cases the alleged employers did not tell claimants where they should report to work or the hours they would work. Rather, third persons advised the claimants there involved when they were to work. Here Cook directed claimant when to report to work and when to quit work. Claimant did not work when he chose; rather he worked the hours selected by Cook. In the Imperial and Smith Brothers cases third parties paid the claimants for their work. In the instant case Cook, not a third party, paid claimant for his work.

It was to Cook's advantage not to withhold income taxes and social security payments from the amounts it paid claimant. This would save Cook the bookkeeping costs of these items, unemployment insurance payments and its share of social security tax.

Claimant's testimony was to the effect that he was working at Cook's pleasure. In other words, Cook could discharge him any hour of any day without cause even though the job was not completed. An independent contractor contracts to do a particular job, not to work on a day to day basis with the possibility of being discharged summarily.

I do not consider Roberts Truck Service v. Singleterry, Okl., 357 P.2d 217, as being in point in this case. The question determined in that case was whether claimant at the time he sustained his injury was a loaned servant of J & J, therefore, not an employee of Roberts for whom he had been employed as a truck driver over a period of fifteen years. This Court held that claimant was not a loaned servant.

By way of recapitulation, it is to be noted that claimant had previously worked for Cook, not Shipman; that as nominal lessee of Shipman's truck he continued to work for Cook; he went on the job at an hour set by Cook; when he arrived he was told to haul either sand or rip-rap as required, desired and designated by Cook; he was paid on the basis previously set for the respective jobs by Cook; he went to the places designated by Cook for loads of material designated by Cook; had his truck loaded by other Cook employees; was directed by Cook's time-keeper, foreman and other employees to the general area and finally exactly where to dump his individual loads and then did so; the number of his loads was counted off by such employees; he was told when to quit work each day and when next to return. He worked at Cook's pleasure.

Not one syllable of evidence appears in this record of effect to indicate that Shipman either had the authority to, cared to or presumed to tell claimant one time whether to work, when to work or where to work. All he did was to cash the checks for what I consider to be the wages claimant collected from Cook for claimant's and the truck's work and then give claimant back his meagre one-fourth as claimant's share of his wages remaining to him after paying Shipman the price he exacted for

furnishing the tool Cook required claimant to have and use in earning his daily bread.

I respectfully dissent.

I am authorized to state that Mr. Justice BLACKBIRD concurs in the views herein expressed.

Rehearing denied.

WILLIAMS, BLACKBIRD, HODGES and LAVENDER, JJ., dissenting.