Dear Representative Kenneth Corn,
¶ 0 This office has received your letter requesting an official Attorney General Opinion in which you ask, in effect, the following questions:
1. Are contract growing arrangements "contracts by adhesion"under Oklahoma law?
 2. Which state's law governs the contract — the state wherethe integrator has its legal place of business or corporateheadquarters, or the state where the contract is initiated orperformed?
 3. Under these contracts are the contract growers consideredto be independent contractors or employees of the integrator?
 I. Introduction
¶ 1 One of the most significant changes in agriculture in recent years has been the increase in the number of farmers who serve as "contract growers." A contract grower is a farmer who raises on his own property an agricultural commodity for another, "the integrator," with the integrator typically owning the crop throughout the process. Thus, in the livestock context, contract growers are paid to raise the integrator's livestock in the contractor's barns with the integrator typically supplying not only the animals but also the food and medicine necessary to their growth. See Holly Farms Corp. v. NLRB, 517 U.S. 392, 395
(1996). In the seed context, integrators provide contract growers with seed that the contract growers plant. The contractors tend the crop and then, at harvest, return to the integrator the progeny of the crop which the integrator then sells to independent farmers who will plant it to raise food or other cash crops. See Delta Pine Land Co. v. Sinkers Corp.,177 F.3d 1343, 1346 (Fed. Cir. 1999).
 II. Adhesion Contract
¶ 2 You first ask whether the arrangement between a contract grower and an integrator is a contract of adhesion. The Oklahoma Supreme Court has defined an "adhesion contract" as follows:
 The term [adhesion contract] refers to a standardized contract prepared entirely by one party to the transaction for the acceptance of the other; such a contract, due to the disparity in bargaining power between the draftsman and the second party, must be accepted or rejected by the second party on a "take it or leave it" basis, without opportunity for bargaining. . . .
Rodgers v. Tecumseh Bank, 756 P.2d 1223, 1226 (Okla. 1988) (footnote omitted).
¶ 3 The fact that a contract is one of adhesion does not necessarily render it void. An adhesion contract will, however, be "interpreted most strongly against the drafter of the instrument." Towe, Hester Erwin, Inc. v. Kansas City Fire Marine Ins. Co., 947 P.2d 594, 597 (Okla.Ct.App. 1997) (quoting Cont'l Fed. Sav. Loan v. Fetter, 564 P.2d 1013,1019 (Okla. 1977)). Any ambiguities or uncertainties in the contract will be construed in favor of the party presented with the form contract. See Dismuke v. Cseh, 830 P.2d 188, 190
(Okla. 1992); Brannon v. Boatmen's Nat'l Bank, 976 P.2d 1077,1083 (Okla.Ct.App. 1998). Indeed, even if the terms of the adhesion contract are clear and unambiguous they will not always be enforceable. As the Supreme Court noted in Rodgers, adhesion contracts reflect an imbalance of bargaining power. SeeRodgers, 756 P.2d at 1226. When this imbalance of bargaining power rises to a sufficient level and is combined with contractual terms which are unreasonably favorable to the other party, the courts will refuse to enforce those terms on the grounds of unconscionability. See Barnes v. Helfenbein,548 P.2d 1014, 1020 (Okla. 1976). You have indicated that integrators typically offer to their growers form contracts which the growers must either accept or reject in their entirety. If this is the case, such contracts are contracts of adhesion. Whether any particular contract between a grower and an integrator is a contract of adhesion is a question of fact which cannot be answered in an Attorney General's opinion. See 74O.S. Supp. 2000, § 18b[74-18b](A)(5).
 III. Choice of Law
¶ 4 Your second question asks which state's law governs the contract — the law of the integrator's domicile or the law of the state where the contract is to be performed. By statute "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." 15 O.S. 1991, § 162[15-162]. Thus, as a general matter, contracts setting up contract growing arrangements will be governed by the law of the state in which the growing is to occur. The parties to a contract may, nevertheless, provide in the contract that the law of another state will govern the agreement. See Carmack v. Chem. Bank NewYork Trust Co., 536 P.2d 897, 899 (Okla. 1975); Williams v.Shearson Lehman Bros., Inc., 917 P.2d 998, 1002
(Okla.Ct.App. 1995). There are limits, however, to the power of the contract to determine the law under which it will be governed. InDean Witter Reynolds, Inc. v. Shear, 796 P.2d 296 (Okla. 1990), the Oklahoma Supreme Court held that the contractual choice of the parties will not control if:
 (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
 (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.
Id. at 299 n. 12 (Okla. 1990) (alteration in original) (quoting Restatement (Second) of Conflict of Laws § 187 (1988)). A state will be found to have a substantial relationship to the parties or the transaction if, for example, the contract is to be performed in that state or one of the parties is domiciled or has its principal place of business there. See Restatement (Second) of Conflict of Laws § 187 cmt. f (1988). Examples of "fundamental policies" as that term is used in the Restatement include policies embodied in statutes that declare certain kinds of contracts illegal and in those "designed to protect a person against the oppressive use of superior bargaining power." Id.
at cmt. g. Whether these criteria are satisfied in a particular case depends on the terms of the contract and the identities of the parties and so is beyond the scope of an Attorney General's Opinion. See 74 O.S. Supp. 2000, § 18b[74-18b](A)(5).
 IV. Relationship Between the Contract Grower and the Integrator
¶ 5 As with any business relationship, the terms of the contracts between contract growers and integrators will vary. You have, however, detailed what you describe as the typical features of one form of contract growing arrangement — that for raising chickens. Under the terms of the typical poultry contract the grower agrees to raise to adulthood a flock of chicks belonging to the integrator. The flock is housed in the grower's barns and tended by the grower. The integrator owns the flock the entire time and provides all food, medicine and other supplies. When the birds are fully grown, the integrator returns for the birds and the grower is compensated under a formula that takes into account the weight and health of the birds as well as the cost of feed expended upon them. You have indicated that under these contracts the grower may hire employees but may not assign the contract or raise birds for another integrator during the contract. Typically the contract will state expressly that the grower is to be considered an independent contractor and not an employee. However, when determining whether a contract creates an employment relationship, courts look not to how a contract describes the relationship but to the actual roles played by the parties. See Texaco, Inc. v. Layton, 395 P.2d 393, 398 (Okla. 1964) (citing Ottinger v. Morris, 104 P.2d 254 (1939)).
¶ 6 The distinguishing characteristic of an employment relationship is control over the manner in which the work is performed. See Tulsa County v. Braswell, 766 P.2d 341, 342
(Okla. 1988) (citing Clark v. First Baptist Church,570 P.2d 327 (Okla. 1977). As the Supreme Court has said:
 An independent contractor is one who engages to perform a certain service for another, according to his own method and manner, free from control and direction of his employer in all matters connected with the performance of the service, except as to the result thereof.
Miller Constr. Co. v. Wenthold, 458 P.2d 637, 639 (Okla. 1969). While the person hiring an independent contractor is limited to specifying what he or she wants accomplished, an employer may specify and control the manner in which an employee performs the actual work itself. This is "[t]he decisive test for determining whether one is an employee or an independent contractor." Bouziden v. Alfalfa Elec. Coop., Inc.,16 P.3d 450, 459 (Okla. 2000).[1]
¶ 7 Some aspects of the contract you describe weigh in favor of a determination that the grower functions as an independent contractor under it. The grower is paid based largely on performance, rather than receiving a wage or salary, which is indicative of an employment relationship. See Mistletoe ExpressServ., Inc. v. Culp, 353 P.2d 9, 12 (Okla. 1959). In addition the grower raises the chickens in his own barns and is free to hire his own employees. Courts have held that provision of one's own equipment and the right to engage employees are factors which militate in favor of finding that the person in question is an independent contractor. See id.; Cook Constr. Co. v. Longcrier,405 P.2d 165, 169 (Okla. 1965) (Williams, J., dissenting).
¶ 8 On the other hand, a number of other elements of the contract you describe militate in the direction of an employment relationship. The integrator may terminate the contract at any time and for any reason. This has been held to be characteristic of an employment relationship. See Mistletoe Express Serv.,353 P.2d at 12. Some of the tools of the job such as feed, medicine, and other supplies are furnished by the integrator which is consistent with an employment relationship. See id.; Smith v.St. Francis Hosp., Inc., 676 P.2d 279, 281 (Okla.Ct.App. 1983). Performance under the contract may not be assigned to another, a fact which courts have held tends to indicate a master-servant relationship. See Cook Constr. Co.,
405 P.2d at 169,170. Similarly, the contract you describe provides that the grower may not raise birds for himself or any other integrator. This sort of exclusivity is a badge of an employment relationship. See Commonwealth Life Ins. Co. v. Gay,365 P.2d 149, 151 (Okla. 1961) (citations omitted).
¶ 9 Most importantly, however, the contract you describe grants the integrator a remarkable degree of control over the manner in which the chickens are raised. Although the grower provides the barns, the barns must be outfitted to the integrator's specifications. These specifications frequently include such details as the water storage capacity of the barns, the wattage of backup generators, and even the spacing of the light fixtures. The methods for raising the chicks are themselves minutely specified in the contract or an addendum to it which lays out such requirements as the maximum number of chicks per brooder, the air temperature inside the barns, and the angle of the watering tubes. The contract also provides for inspection by the integrator to ensure that these conditions are complied with. It is extremely difficult to characterize this situation as one in which the grower fulfills the contract "according to his own method and manner, free from control and direction of . . . [the integrator] in all matters connected with the performance of the service, except as to the result thereof." Miller Constr. Co.,458 P.2d at 639.
¶ 10 Although we cannot in an Opinion determine that any particular contract growing arrangement establishes an employer-employee relationship, where the contract provides in detail the manner in which the livestock or crop is to be raised, the contract grower ceases to be an independent contractor and becomes an employee.
¶ 11 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Contracts establishing contract growing arrangements thatare presented to the grower with no opportunity to negotiatetheir essential terms are contracts of adhesion.
 2. Absent an effective choice of law by the parties, contractgrowing arrangements providing for the raising of a crop inOklahoma are governed by the laws of Oklahoma. See 15 O.S.1991, § 162[15-162].
 3. Where an integrator directs in detail the manner in whichraising of the crop is to be performed the contract grower is theemployee of the integrator.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
MILES TOLBERT ASSISTANT ATTORNEY GENERAL
[1] Bouziden is only the most recent in a long line of cases that have described the control of the work done as "the decisive test" in determining whether a employment relationship exists.See, e.g., Barfield v. Barfield, 742 P.2d 1107, 1110 (Okla. 1987); Murrell v. Goertz, 597 P.2d 1223, 1225 (Okla.Ct.App. 1979); Union Mut. Ins. Co v. Hill, 356 P. 2d 336, 337 (Okla. 1960); Yellow Cab Co. v. Wills, 185 P.2d 689, 690 (Okla. 1947). There is, somewhat confusingly, a parallel line of cases that list several relevant factors and announce that "no one factor is controlling." See, e.g., Duncan v. Powers Imports,884 P.2d 854, 856 (Okla. 1994) (quoting Coleman v. J.C. PenneyCo., 848 P.2d 1158, 1160 (Okla. 1993)); Swafford v.Williams, 863 P.2d 1215, 1217 (Okla. 1993). The apparent tension between these decisions can be resolved by reference to the seminal case relied upon by all of the "no one factor is controlling" decisions — Page v. Hardy, 334 P.2d 782 (Okla. 1958). That case held that "control . . . in all matters connected with the performance of the service" is the determinative issue, with the various factors offered as means of determining if such control exists. Id. at 784.