**Thomas Jefferson BREWER, Petitioner,**

v.

**BAMA PIE, INC., the Standard Insurance Company and the State Industrial Court, Respondents.**

**No. 40114.**

Supreme Court of Oklahoma.

March 17, 1964.

Bill B. Pigman, James E. Poe, Tulsa, for petitioner.

Fenton, Fenton, Smith & McCaleb, Milton Moon, Oklahoma City, Charles R. Nesbitt, Atty. Gen., for respondents.

BERRY, Justice.

The trial court's order under review rests on its finding that claimant, when injured on January 5, 1962, was an independent contractor rather than an employee of Bama Pie, Inc., the entity from which compensation was sought. The sole question to be decided on review concerns the legal relationship between the parties. Claimant contends he occupied the status of an employee whose job consisted of delivering pies from Bama's Bakery to its customers, while Bama maintains that he was a self-employed pie distributor engaged in his own business.

Where the relationship of employer and employee forms a disputed issue on review of a decision made by the State In-

dustrial Court, the reviewing tribunal will reweigh the evidence adduced below and undertake an independent evaluation of both law and facts to establish the presence or absence of such relation. Williams et al. v. Branum et al., 192 Okl. 129, 134 P.2d 352; Standard Magnesium Co. v. Cotner, Okl., 332 P.2d 1, 4.

It is not disputed that in its initial stages the relationship between the parties was that of employer and employee. This relationship is conceded to have existed from June 1, 1961, to August 10 of that year, when the parties entered into a written contract which, Bama contends, operated to transform claimant's status into that of an independent contractor. While he was admittedly an employee of Bama, claimant was paid a salary of seventy-five dollars per week and his duties consisted of delivering pies to Bama's customers along an established route of travel. Deliveries were made by truck which was owned by Bama.

Under the written contract of August 10, 1961, claimant (a) purchased from Bama, for a consideration payable in weekly installments, the specially equipped truck he used in making pie deliveries; (b) gave Bama a chattel mortgage as security for the purchase price of the truck plus the amount equal to the insurance premium for one year; (c) agreed to "purchase" pies from Bama at specified discounts below the wholesale price; (d) undertook to be liable for damage or loss to the pies occurring upon their delivery to him; and (e) assumed the risk of damage to the truck and the obligation to maintain it. According to Bama, these contractual arrangements clearly indicate a relationship of vendor-vendee.

While the parties were governed by this contract, claimant continued to serve the same route and was using the same truck. The new arrangement required no commitment of capital to purchase merchandise. As before, claimant received the pies daily at 4:00 a. m., when he reported to Bama's dock, and paid for them on his return from the route. This daily work consumed all of his time and he performed no other service

for any one else. He had no established place of business as a pie distributor, and, in fact, no customers of his own. His truck exhibited Bama's signs, the sales slips all carried Bama's advertising and claimant wore a uniform with Bama's name thereon. Customers' complaints and adjustments were handled through Bama's office. In short, so far as customers were concerned, claimant had no identity separate from that of Bama.

Bama had the right and could dictate the price of pies, change claimant's route at will or even terminate his services altogether without incurring any liability. Claimant had no route and no business to which he could claim a right of continuity. Whatever property interest claimant may have acquired under the contract was subject to immediate extinction by Bama's unhampered power to dispense with his services at will and without incurring any liability.

Claimant's status in relation to Bama is to be determined not alone from the written contract but from all the facts and circumstances adduced by the evidence. Wilcox v. Swing et al., 71 Idaho 301, 230 P.2d 995, 997. The decisive test in determining whether one is an employee or an independent contractor is the right to control the physical details of the work. Such right may be established either by a formal contract or by conduct of the parties thereunder. A strong evidentiary element of control is the power to discharge at will—without cause and without incurring any liability to the other party. An employee may quit or be summarily discharged but an independent contractor remains under a legal obligation to complete his undertaking. Robinson v. Board of County Commissioners of Hughes County, Okl., 289 P. 2d 668; Press Pub. Co. v. Industrial Accident Commission, 190 Cal. 114, 210 P. 820, 823; Brenner v. State ex rel. Oklahoma Employment Security Comm., 201 Okl. 70, 201 P.2d 236, 240. In the case last cited we quoted with approval this language of Justice Cardozo found in Glielmi v. Nether-

land Dairy Co., Inc., 254 N.Y. 60, 171 N.E. 906:

" 'We think there is evidence to sustain the finding of the board that claimant was a servant, employed to sell the milk and cream of his employer in return for a commission. The contract is adroitly framed to suggest a different relation, but the difference is a semblance only, or so the triers of the facts might find. * * * Much of his apparent freedom is in truth apparent only. * * * *If he does anything at variance with the will of his employer, its policy or preference, he knows that his contract of employment may be ended overnight.* He is bound hand and foot as long as he works the route at all, his freedom an illusion, and his independence but a name.' " (Emphasis ours.)

■ Bama places principal reliance upon the fact that claimant "owned" the delivery truck and his compensation was in form of discount or commission and depended on sales made, instead of stipulated wages. These factors, however, are not conclusive in fixing claimant's status in relation to the person from whom compensation is sought. Standard Magnesium Co. v. Cotner, supra; State Highway Comm. v. Brewer, 196 Okl. 437, 165 P.2d 612.

■ We are satisfied from the evidence that the contract with Bama did not transform claimant's status into that of an independent contractor. Under the arrangement between the parties, Bama possessed as before the power to compel obedience to all instructions it desired to give. Claimant was thus not free from Bama's right of control.

The order denying compensation is accordingly vacated with directions to enter a finding that claimant was, on the date of the injury for which compensation was sought, an employee of Bama Pies, Inc.

BLACKBIRD, C. J., and JOHNSON, WILLIAMS and IRWIN, JJ., concur.

JACKSON, J., concurs specially.

HALLEY, V. C. J., and WELCH and DAVISON, JJ., dissent.

JACKSON, Justice (concurring specially).

My concurrence in the instant case is based upon the oral testimony which was presented at the trial, and not upon the written agreement. In the written agreement claimant agreed to buy a truck from Bama Pie, Inc., and to execute a note and mortgage therefor; he agreed to buy pies from Bama and use the truck to deliver the pies to his customers; he agreed to receipt for the pies when delivered, and pay for them at the end of the day when he returned from his route either in cash or by receipts signed by Bama approved credit customers of claimant; and Bama agreed to sell pies to claimant at prevailing wholesale cost, less 25%. The agreement recites that the relationship of the parties is that of "buyer and seller", and that seller has no control over the pies after purchase, nor over the truck. This contract was entered into as of August 10, 1961, and provides no terminal date. I therefore find nothing in the agreement which establishes the relationship of master and servant or employer and employee.

Claimant testified, however, that he was instructed that he would continue to deliver pies in the same manner and method as he was taught while an employee; that he was to remain on the same route previously assigned and used the same route book after the agreement; that he continued performing the same duties as before the agreement; and further testified:

"Q. Now, at the time—from time to time, were you ever subjected to any supervision by any employees or supervisors of Bama Pie?

"A. Well, if I'd miss a stop, or something like that, and they called in,

then the supervisor would come up to me that evening when I came in and ask me why I didn't stop. And one particular time, I told him that I ran out of pies. And he said, there are plenty here. Make sure you have enough tomorrow."

"Q. Did he tell you to make sure to stop at that same place the next day?

"A. Yes, sir.

\* \* \* \* \* \*

"Q. How often would you call on each of those customers?

"A. I was supposed to call on them every day.

"Q. And was that the instructions that you received?

"A. Yes, sir.

"Q. From whom?

"A. From the supervisor, Frank Durham.

"Q. After you bought your truck, Tom, did the supervisor continue to tell you things to do and places to go and customers to call upon?

"A. Yes, sir.

"Q. Did you at any time attempt to discontinue services to any of the customers on the list that Bama Pie had given you?

"A. Yes, sir.

\* \* \* \* \* \*

"A. Well, I was going to pull out of this particular store there in Okmulgee, and he came up here and talked to the supervisor, and when I come in that evening, he told me this guy had been there, and he wanted me to stop there the next day.

\* \* \* \* \* \*

"A. I wasn't supposed to get on anyone else's route.

\* \* \* \* \* \*

"Q. Who told you what time to report?

"A. Frank Durham. (supervisor) "

Claimant further testified that he was required to take pies to Safeway but received no additional compensation for this service.

The president of Bama Pie, Inc., testified that "we would make suggestions", but "never" gave any orders. Frank Durham, sales manager, testified that he never exercised any control over claimant "after he bought his route."

An award was denied upon the ground that claimant was an independent contractor and not an employee of Bama Pie, Inc.

From the testimony presented in this case I am of the opinion that Bama Pie, Inc., continued exercising actual control over the claimant after the written agreement was entered into, and that the only practical difference between the operations of the parties before and after the agreement was in the method of payment for claimant's services. As shown in the majority opinion a jurisdictional question is presented and we must make our own independent determination of the relationship between the parties.