MARYLAND NATIONAL INSURANCE
COMPANY, a Corporation, and James
E. Mason, Petitioners,

v.

The DISTRICT COURT OF OKLAHOMA
COUNTY, State of Oklahoma, and A. P.
Van Meter, District Judge, Respondents.

MARYLAND NATIONAL INSURANCE
COMPANY, a Corporation, and
Carl Brooks, Petitioners,

v.

The DISTRICT COURT OF THE SEVENTH
JUDICIAL DISTRICT OF OKLAHOMA
COUNTY, State of Oklahoma, and Jack R.
Parr, et al., Respondents.

Nos. 43342, 43437.

Supreme Court of Oklahoma.

April 15, 1969.

Rehearings Denied July 1, 1969.

Forest N. Simon, Martin & Kisner, Oklahoma City, for petitioners.

Curtis P. Harris, Dist. Atty., D. K. Cunningham, Asst. Dist. Atty., Oklahoma City, for respondents.

JACKSON, Justice.

These two related original proceedings raise questions of first impression concerning the constitutionality of the bail bond forfeiture provisions of an act of the 1965 Legislature, now codified as 59 O.S.1968 Supp., Sections 1301 through 1340, as they affect the liability of the surety upon the bond. Because of the public nature of the questions presented, we have decided to grant petitioners' Applications to Assume Original Jurisdiction in order to consider their Petitions for Writ of Prohibition.

Prior to the adoption of the 1965 act, the rights of sureties on bail bonds as regards forfeiture were determined under 22 O.S. 1961, Section 1108, which provided, among other things, that "After the forfeiture, the county attorney must proceed with all due diligence, by action against the bail upon the instrument so forfeited". Under well settled law, this section required the county attorney to file an ordinary civil action on the forfeited bond. Since no special procedure was provided, the general rules of civil procedure were applicable, including the requirement of 12 O.S.1961, Sec. 556, that " * * * Issues of fact arising in actions for the recovery of money * * * shall be tried by a jury, unless a jury trial is waived * * * ".

The act of the 1965 Legislature, 59 O.S. 1965 Supp., Sec. 1301 et seq., provides spe-cial procedure for enforcing the liability of the surety on the bond which does not include a jury trial. This is the basis of petitioners' chief complaint in the proceedings now before us.

Briefly summarized, the pertinent portions of the new statute provide (Sec. 1330) that in the event of a breach of the undertaking, the court shall declare the undertaking forfeited and direct a copy of the order to the Insurance Commissioner, who shall "give notice" by mailing a copy thereof to the surety bondsman and his insurer, directing them to make a deposit in the face amount of the bond within 30 days; (Sec. 1332) that the bondsman shall be notified also by the trial court that he may, within 30 days, file a motion to vacate the forfeiture, stating the grounds therefor, and that if such motion is not filed, the forfeiture "shall become a final judgment and the clerk shall immediately issue execution upon the undertaking in accordance with law". The last sentence of Sec. 1330 also provides in effect that the "bail bondsman or the insurer" shall have at least ten days' notice of the required appearance of the defendant in the criminal case. Sec. 1333 provides that "All liability of the bondsman may be enforced on motion without necessity of an independent action *if conformance with the foregoing is shown*" (emphasis supplied).

It is unnecessary to notice the undisputed facts in these cases except to say that under petitioners' own allegations, full and complete "conformance with the foregoing" was shown, including the giving of both 30 day notices and the 10 day notice referred to in the paragraph above. No motions to vacate the forfeitures were filed. Executions have been issued pursuant to Sec. 1332 and we are asked to prohibit the trial judges from proceeding further in the cases insofar as the collection of money from petitioners is concerned.

In the briefs, petitioners argue that the new statute unconstitutionally denied them the right to a jury trial, and violates

due process and equal protection clauses of both state and federal constitutions.

■ We first consider the question of petitioners' right to a jury trial. In 1921, in Keeter v. State ex rel. Saye, 82 Okl. 89, 198 P. 866, 17 A.L.R. 557, this court gave exhaustive consideration to the question of the jury trial guarantees of our own Constitution, in the face of prior holdings not in harmony, and held:

> "The right to trial by jury, declared inviolate by section 19, art. 2, of the Constitution of Oklahoma, except as modified by the Constitution itself, has reference to the right as it existed in the territories at the time of the adoption of the Constitution, and the right to a jury trial therein referred to was not predicated upon the statutes existing in the territories at that time, but the right as guaranteed under the federal Constitution and according to the course of the common law."

Thus, although it is well settled that the jury trial guarantees of the Seventh Amendment of the United States Constitution have not been considered directly applicable to trials in state courts, 31 Am.Jur. Jury, Section 9, the same result is reached by virtue of Art. 2, Section 19, of our own Constitution, and the above quoted rule. It is equally well settled that the right of trial by jury "preserved" by the United States Constitution is the right as it existed at common law, 31 Am.Jur. Jury, Sec. 12. Therefore, the question for decision is whether the petitioners in these proceedings, obligors on bail bonds in criminal cases, would have been entitled to jury trials as a matter of right at the common law.

■ We note at the outset that under Rule 46(f) of the Federal Rules of Criminal Procedure, the liability of the obligors on a bail bond in a criminal case in the federal courts may be enforced on motion without a jury trial. Since this rule was promulgated by the United States Supreme Court itself under authority granted by the Act of Congress of June 29, 1940, c. 445, 54 Stat. 688, it could reasonably be said to constitute at least inferential authority for the proposition that the obligors had no constitutional right under the United States Constitution to a jury trial. Perhaps for this reason, we have been unable to find any case in which the United States Supreme Court has passed directly upon the question before us.

No prior decisions of this court precisely in point have been cited, and our own research has disclosed none. This is not surprising, in view of the fact that until 1965, the jury trial requirements of our code of civil procedure were applicable in proceedings to enforce the liability of a bail bondsman, and it was not necessary to examine constitutional guarantees on this question.

The holdings of the courts of other, and older, jurisdictions are therefore helpful on this point. In 1874, in People of the State of New York v. Quigg, 59 N.Y. 83, the Court of Appeals of New York considered a statute enacted in 1844 which provided for summary judgments, without the intervention of a jury, upon forfeited recognizances. The appeal in that case was from an order of the trial court denying the motion of Quigg, a bail bond bondsman, to vacate the summary judgment entered against him on the forfeited bond. It was argued, among other things, that the statute denied him the right to trial by jury as guaranteed in state and federal constitutions. The court said:

> " * * * The right to a trial by jury, if any such right would have existed but for the special laws affecting the obligations and liability of the defendants, was waived by the terms of the recognizances and assent of the cognizors * * *. But the proceedings for judgment were not suits at common law, but a special statutory proceeding, summary in its character and unknown to the common law, and therefore not within the provision of the federal Constitution invoked by defendants. * * *

"In actions upon recognizances, the trial was at common law by the record, and by the court and not a jury, and even in actions upon recognizances an issue upon the existence of the recognizance as well as the forfeiture were not triable by a jury."

In that case, the New York Court of Appeals referred with approval to an earlier (1850) case in the Supreme Court of New York, Gildersleeve and Roberts v. People, 10 Barb. 35, which had considered the same 1844 act. In that case, the court said:

"A recognizance is an acknowledgment of a debt, and when filed in a court of record is a matter of record. At common law it bound the lands of the conusor and an execution might be issued upon it as upon a judgment. * * * It was not necessary to bring an action upon the recognizance, because there was nothing to be tried. The recognizance was an acknowledgment of record that a debt was due, and was in its legal effect a confession of judgment. * * *

"It will be seen that this is substantially the re-establishment of the rule which existed at common law."

In Walker v. Commonwealth, 144 Va. 648, 131 S.E. 230, an appeal by the sureties in a bail bond forfeiture case, the court said:

"The recognizance, when duly evidenced, is a debt of record upon which an award of execution may be had in a proceeding by a writ of scire facias. The general issue in such a proceeding is nul tiel record, in which the plaintiff has the burden of proof. The sole question involved in such issue is the existence of the record alleged in the scire facias. The record itself is the only evidence receivable to prove its contents, and the issue is to be tried by the court upon an inspection of the record."

On this problem, the history of the early 19th century laws of the State of New York, as outlined in Gildersleeve, supra, bear a rather peculiar analogy to the questions now before us relating to the act of our 1965 Legislature.

In New York before 1818, a recognizance, when forfeited, was sent by the court in which the forfeiture was taken to the court of exchequer, which was authorized to enforce it by execution. In 1818, the courts of common pleas of the various counties were vested with like powers relative to the collection of forfeited recognizances. This statutory change in the jurisdiction of the courts gave rise to an unforeseen problem. As the court said in *Gildersleeve*:

"About the year 1830 an action of debt was for the first time brought in the supreme court of this state founded on a recognizance. The reason why this course was pursued was, that when the powers of the court of exchequer, which was a branch of the supreme court, were transferred to the several courts of common pleas, *an execution issued by one of those courts could not be sent out of the county.* * * *" (Emphasis supplied)

It was thus necessary to file an ordinary common law action of debt, in which issues of fact were tried to a jury, in order to reach the assets of a bail bondsman outside the county in which the bond was forfeited. The subsequent act of 1844, under consideration in the Gildersleeve case, which was "substantially the reestablishment of the rule which existed at the common law" again made the common law action of debt unnecessary.

By analogy to our own situation: before 1965, it was necessary by virtue of statute in this state to bring the civil procedure equivalent of the common law action of debt in order to collect a forfeited recognizance. The 1965 act, making more summary relief available for such purpose, renders the independent civil action unnecessary.

It is obvious that in the common law procedure we have been discussing, no provision was made for plea or proof by the debtor of matters arising after the date of the recognizance entitling him to a dis-

charge of his liability. In the modern cases these are actually in the nature of affirmative defenses and are familiarly described as defenses resulting from an "act of God, act of the law, or act of the obligee". See Pruitt v. State ex rel. Farris, 186 Okl. 205, 97 P.2d 35. We must therefore determine whether similar relief was available at the common law, and, if so, whether a jury was required.

In considering this same question, the New York court said in *Gildersleeve*:

"It was said upon the argument that this statute deprives a party of the opportunity of setting up any matter which might be alleged in discharge of his liability. But we do not think that such will be its practical effect. Under the common law rule it frequently occurred that there were matters which had arisen subsequent to the entering into of the recognizance, which in equity and justice entitled the conusor to a discharge, and a writ of *audita querela* was resorted to for that purpose. But afterwards, as a more convenient method, the courts were in the habit of granting summary relief upon notice. * * *"

Proceedings upon the writ of audita querela had all the incidents of an ordinary action, including, presumably, the right of trial by jury on issues of fact. 7 Am.Jur. 2d Audita Querela, Sec. 4.

It appears, however, that the reference to audita querela in *Gildersleeve* was not entirely appropriate, at least as applied to forfeited bail bonds in criminal cases. Although there were some differences, bail bonds were traditionally classed as recognizances. See 8 Am.Jur.2d Bail and Recognizances, Sec. 2. Common law recognizances seem to have originated as a result of the desires of creditors to avoid the hazards and delays incident to obtaining judgments in order to collect debts. They did so by obtaining what may quite literally be called "conditional agreed judgments" against their debtors at the time the debt was incurred. The confession of judgment of necessity involved an actual waiver of the right to jury trial. Such judgments

were discharged upon performance of the condition or could be enforced by execution upon breach thereof. According to one authority, at least in the early development of the common law, execution could issue even without the writ of scire facias, which was only required when execution was desired more than one year after the date of the recognizance.

These procedures were followed in ordinary transactions involving the loan of money, and in bail transactions in both civil and criminal cases. They proved so convenient that in 1285 the Statute of Merchants made similar procedures available to merchants in the principal cities, and in 1353 the Statute of Staples made them available to merchants in the "staple" towns.

In loan transactions, mercantile transactions, and in bail transactions in civil cases, the recognizance amounted to a "conditional agreed judgment" as between private parties.

Abuses of the procedure soon developed, probably because of fraud and collusion between the officials who enrolled the recognizances and judgment creditors, and in 1336, even before the Statute of Staples, Parliament authorized the writ of audita querela as a remedy. Although it was originally aimed at the abuses incident to the common law recognizance, it soon became available against any judgment whose enforcement would be contrary to justice, either because of matters arising subsequent to its rendition or because of prior existing defenses which were not available in the original action due to the fraudulent conduct of the judgment creditor. In the latter capacity it came to this country with the colonists.

Audita querela, however, was not available as against the crown. Avery v. United States, 12 Wall. (U.S.) 304, 20 L.Ed. 405. In that case, for that reason among others, the United States Supreme Court affirmed the judgment of a Circuit Court denying Avery the right to attack, by writ of audita querela, a prior money judgment "for a large demand" obtained against him by the

United States at a time when he had, but allegedly did not know of, a proper set-off against it.

Since in an attack by a surety upon a judgment based upon a bail bond forfeiture in a criminal case, the judgment creditor is the sovereign and not a private party, audita querela, with its attendant right to a jury trial, was not available at the common law.

For comments concerning the jury, recognizances or debts of record, the Statute of Merchants, the Statute of Staples and the writ of audita querela, upon which much of the foregoing discussion is based, see Plucknett, A Concise History of the Common Law, pages 107 to 138 and 380 to 394; 7 Am.Jur.2d Audita Querela; and 8 Am.Jur.2d Bail and Recognizance. We are aware of statements in some of the cases that audita querela was in the nature of an equitable remedy; see, for instance, Oliver v. City of Shattuck ex rel. Versluis, 10 Cir., 157 F.2d 150. This seems doubtful in view of its origin, according to Plucknett, in Parliament in 1336.

The same relief available as between private parties by the use of audita querela was available, but without a jury, to the surety on a criminal bail bond through the unquestioned power of the common law courts to open, modify or vacate judgments. These proceedings after judgment were addressed to the sound judicial discretion of the court, 30A Am.Jur., Judgments, Sec. 632, and were particularly appropriate in the case of judgments by confession, 30A Am.Jur., Judgments, Sec. 637. As we have seen, the common law recognizance was literally a "conditional judgment by confession". It is said that as to judgments by confession, the power of the common law courts to open, modify or vacate a judgment did not end with the term but might be exercised thereafter, 30A Am. Jur., Judgments, Sec. 650; 112 A.L.R. 798. The grounds for relief on motion in proceedings after judgment were generally the same as those which would have justified the writ of audita querela. 30A Am.Jur., Judgments, Sec. 656.

On the jury trial question, we conclude that at the common law the surety on a forfeited bail bond in a criminal case was not entitled as a matter of right to a jury trial at any stage of the proceedings except in cases where, for any reason, it was necessary to bring an ordinary common law action of debt upon the forfeited recognizance. As we have seen, under the 1965 act it is not necessary to follow that procedure in this jurisdiction.

■ We hold that petitioners in the cases now before us were not unconstitutionally denied the right to jury trial by the statute under consideration.

■ In the briefs in this court, petitioners do not argue extensively the due process and equal protection questions raised in their applications and petitions. It is suggested that the new procedure provided in the 1965 act denies them notice, and denies them an opportunity to defend in an orderly proceeding before a competent and impartial tribunal having jurisdiction of the issues and jurisdiction of the parties.

We are unable to agree. It is too well settled to require citation of authority that the existing applicable law is a part of every contract. Petitioners were therefore charged with notice of the fact that in case of the forfeiture of the bonds, they could, within 30 days, file motions to set the forfeitures aside, and that at the hearing on the motions they could raise any defenses available to them under the circumstances. Note also that the new statute (Sec. 1332) provides for *actual* notice of the beginning of the 30 day period, which was concededly given in these cases, and that the motions must be heard and determined adversely to petitioners before the judgment against them becomes final. Petitioners do not argue that the hearing on the motions would not be an "orderly proceeding".

The petitions for writ of prohibition are denied, and the temporary order staying execution, heretofore entered in these cases, is quashed.

All the Justices concur.