1998 OK 80

Marilyn Sue WELDON, Appellant,

v.

Charles DUNN, Individually, Charlene Dunn, Individually, Shirley Smith, Individually, Charles Dunn and or Charlene Dunn and or Shirley Smith, d/b/a Poteau Beauty College, Appellees.

No. 88166.

Supreme Court of Oklahoma.

July 14, 1998.

Lewis A. Berkowitz, Berkowitz Law Firm, Inc., Tulsa, for Appellant Marilyn Sue Weldon.

Tom H. Gudgel, III and Neal E. Stauffer, Stauffer, Rainey, Gudgel & Hathcoat, Tulsa, for Appellees Charlene Dunn and Charles Dunn.

Jerry Fraley and Virginia C. Holleman, Cathcart, Gofton & Fraley, Oklahoma City, for Appellee Shirley Smith.

SUMMERS, Vice Chief Justice.

¶ 1 Beauty college student claims to have injured her back helping a client return to a sitting position after washing the client's hair. She sued the college and its owners in District Court for her injuries. The only

question is whether the trial court correctly ordered summary judgment for the defendants. We conclude that it did, and affirm.

¶2 Marilyn Sue Weldon filed suit, alleging that she was injured when the salon chair she was operating as a student of the Poteau Beauty College failed to work properly. She had washed the hair of a woman with the chair in a reclining position. The chair did not spring back, and due to previous injury the client had to be helped into an upright position. Weldon claims to have injured herself while positioning the client upright. She claims that the chair was located in close proximity to a manicure table, and that in maneuvering around this table as she lifted her customer, she twisted her back. She also claims that she was not given adequate instruction about lifting a person into an upright position. Defendants do not concede she was injured as alleged, but for summary judgment purposes we take her version as true. *Flanders v. Crane*, 1984 OK 88, 693 P.2d 602, 605 (Okla.1984).

¶3 In her petition she stated three theories of recovery: (1) premises liability, (2) products liability and (3) negligence. She later attempted to file an amended petition, stating as additional theories of recovery (1) professional liability and (2) breach of fiduciary duty. This amended petition was not timely filed, and the record is devoid of any leave granted by the trial court to file it.

¶4 The trial court held that the cause of action for breach of fiduciary duty was not timely filed, that the cause of action for professional liability was in substance the same as breach of fiduciary duty, and that otherwise, no such cause of action existed. As for the theory of premises liability, the trial court held that the claimed defect (in the chair) was open and obvious, thus barring any recovery. The trial court held that Weldon failed to state a claim for products liability [1], and that her cause of action for failure to instruct was not supported because there was no breach of duty by defendants. Summary judgment was granted and Plaintiff appealed.

¶5 The Court of Civil Appeals agreed that summary judgment was proper as to her theories of breach of fiduciary duty, professional liability, and products liability. However, the court held that there were factual issues remaining that could not be determined as a matter of law, and reversed and remanded with regard to the premises liability and failure-to-instruct theories. We granted certiorari.

¶6 We look first to the question of whether the trial court was correct in its ruling with regard to the professional liability and breach of fiduciary duty theories. These theories were not pled in the first petition. The amended petition was admittedly untimely filed, and defendants did not consent to such amendment. The trial court recognized that the amended petition was untimely, took the matter under advisement, and granted summary judgment under these theories. The trial court's ruling was correct. An amended petition, untimely filed and filed without leave of court or consent of the opposing party, is a nullity. *Hunter v. Echols*, 1991 OK 114, 820 P.2d 450, 452 (Okla.1991). It must be treated as if it was never filed. *Id.* at 453.

¶7 Weldon also sought recovery under theories of premises liability and the Beauty College's failure to give adequate instructions. In reversing the trial court, the Court of Civil Appeals relied on language used in the amended petition rather than the original petition. The court found that Weldon had alleged that the Beauty College "owed a duty to the Plaintiff to warn the Plaintiff of lifting requirements and to properly teach the Plaintiff to lift so as to avoid the hazards of the lifting requirement" and "wilfully or recklessly or negligently failed to teach the Plaintiff how to lift and or warn the Plaintiff of the lifting requirements." Because of these factual allegations the appellate court reversed and remanded.

¶8 Reliance on these factual assertions found only in the amended petition was error. Mere allegations in a pleading unsupported by evidentiary material in response to

---

1. Because neither party asserts error with regard to the trial court's or Court of Civil Appeals' resolution of the products liability theory, we do not address it.

a motion for summary judgment will not defeat the motion if it is otherwise good. *Stephens v. Yamaha Motor Co.*, 1981 OK 42, 627 P.2d 439 (Okla.1981) (once party asserting the motion for summary judgment shows there is no material controversy, the party opposing motion cannot rely solely on pleading but must present evidentiary material.) Further, these allegations are located only in the amended petition.[2] As stated in *Hunter*, an amended petition filed out of time and without consent of court or the opposing party must be considered as if it were never filed. *Id.*

¶9 We must now determine whether the documents properly in the record, and before the trial court for its consideration, set forth any material facts which remain disputed. The following facts are uncontroverted. Weldon was a student receiving instruction from the Beauty College. She had used the chair in question on prior occasions, and knew the chair malfunctioned on an intermittent basis. With that knowledge she chose the chair for this job. A manicure table was in close proximity to the chair. When the chair malfunctioned Weldon attempted to lift a woman into the upright position. At the time of her injury there was no instructor standing with her. Approximately one month before the incident, the Beauty College had been inspected by an inspector from the Oklahoma State Board of Cosmetology, and the chairs and shampoo bowls were found to be in satisfactory condition. In the application Weldon had been informed of the physical demands of having a cosmetology career.

 ¶10 Weldon's remaining theories of recovery are based on negligence. She claims negligence on the part of the beauty college operator occurred in two ways. First, she claims that as an invitor, the beauty college had a duty to warn her of dangers, such as the malfunctioning chair, which were not open and obvious. Second, she claims

that as her instructor, the beauty college had a duty to instruct her on how to lift clients.

 ¶11 Both of Weldon's theories hinge on a duty owed by the beauty college, either to warn her of hidden dangers or to give her proper instruction. One of the most important considerations in establishing a duty is foreseeability. *Delbrel v. Doenges Bros. Ford Inc.*, 1996 OK 36, 913 P.2d 1318 (Okla.1996). Foreseeability is critical as it determines (1) to whom a duty is owed and (2) the extent of the duty. A defendant owes a duty of care only to foreseeable plaintiffs. *See Haas v. Firestone Tire and Rubber Co.*, 1976 OK 178, 563 P.2d 620, 625 (Okla.1977). As for the extent of the duty, it too is determined in great part by the foreseeability of the injury. *Bradford Securities Processing Serv. v. Plaza Bank & Trust*, 1982 OK 96, 653 P.2d 188 (Okla.1982). "Whenever the circumstances attending a situation are such that an ordinarily prudent person could reasonably apprehend that, as the natural and probable consequences of his act, another person will be in danger of receiving an injury, a duty to exercise ordinary care to prevent such injury arises." *Id.* at 190.

¶12 In *Rogers v. Hennessee*, 1979 OK 138, 602 P.2d 1033 (Okla.1979), we discussed premises' owner's duty in the setting of a beauty school. There, a student brought a negligence suit, alleging that the owner of the school was responsible for injuries received when she slipped and fell in a puddle by the shampoo bowls. We agreed that the status between the parties was invitor-invitee.[3]

> The law casts on the invitor the duty to exercise reasonable care to keep the premises in a reasonably safe condition and to warn invitees of conditions which are in the nature of hidden dangers, traps, snares, pitfalls and the like. All normal or ordinary risks incident to the use of the premises are assumed by the invitee. No liability arises for any injury resulting from dangers which are so apparent or readily

---

**2.** Both assertions are found in the theory relating to breach of fiduciary duty.

**3.** "The parties [Beauty College and student beautician] stand in an undisputed invitorinvitee rela-

tionship" we said in *Rogers* at P. 1034, not one of master-servant as urged in the dissenting opinion.

observable that one would reasonably expect them to be discovered. Moreover, failure to remove known but obvious hazards by alteration or reconstruction of the premises constitutes no breach of duty. *Id.* at 1034. We went on to explain that what constitutes a hidden danger depends on the physical surroundings and on the use made of them at the time of the injury. *Id.* citing *Henryetta Construction Co. v. Harris,* 1967 OK 213, 408 P.2d 522 (Okla.1965); *see also Jack Healey Linen Serv. Co. v. Travis,* 1967 OK 88, 434 P.2d 924, 927 (Okla.1967). The student's familiarity with the general circumstances does not automatically transform a danger into an open and obvious defect; rather the condition is judged by objective, not subjective, standards. *Id.*

¶ 13 Here, the shampoo chair was not a hidden danger as to Weldon, because she knew that the chair did not work all the time. Weldon asserts that the placement of the chair in close proximity to a manicure table created a dangerous condition. However, this was not a hidden condition or pitfall. She knew the manicure table was close to the shampoo chair. The premises had been inspected a month before and were found to be in a reasonably safe condition.

¶ 14 As for Weldon's second assertion that the beauty college was negligent in failing to give instruction about the lifting of customers, we again look to the concept of duty. Weldon cites us to no authority imposing such a duty upon a defendant such as this one, nor does our research uncover any. Plaintiff claims that the particular circumstances—an intermittently working shampoo chair and an injured client—were foreseeable, and that the defendants had a duty to instruct her about how to handle such a situation.

¶ 15 We disagree with Weldon's simplification of the facts. The undisputed facts show that while the intermittently working shampoo chair and the previously injured client contributed to her injury, these were not the only contributing factors. The undisputed facts show that Weldon chose the chair, knowing of its malfunction, that she knew of the manicure table's location, that she did not move the manicure table, that the chair malfunctioned in this instance, and that the client had suffered a prior injury leaving her in a condition where she could not sit up alone. All of these factors together led to Weldon's injury.

¶ 16 Such a combination of facts could not have been foreseen by a reasonably prudent beauty college. The beauty college exercised ordinary care in instructing Weldon about the pressure of a career in cosmetology and the possibility of back injury. We note that the materials and instruction given to Weldon establish that the Beauty College and its owners informed its students as to the dangers of bad posture and back strain. The Admission Information for enrollment she received said:

*Disadvantage of Cosmetology Careers*

Cosmetology is a physically and mentally demanding profession that requires dexterity and patience. There is always the possibility of chemical allergies, foot, leg and back problems.

The foreseeability of possible back strain is clear, and was the subject of a warning.

¶ 17 Ordinary care is that degree of care which "prudent persons engaged in the same kind of business usually exercise under similar circumstances." *Phillips Petroleum Co. v. Price,* 1956 OK 191, 298 P.2d 772 (Okla. 1956). The Beauty College exercised ordinary care by instructing on the possibility of back strain and by teaching good posture. We find no authority holding beauty colleges to a higher standard or warranting further instruction as to all possible events arising under an infinite combination of circumstances.

¶ 18 Having found no authority which would place a duty on this defendant to instruct as to how to sit up an injured client under these circumstances, and in the absence of a premises defect of a hidden nature causing or contributing to the injury, we conclude that the trial court correctly granted summary judgment on the Plaintiff's remaining theories as well.

¶ 19 The Court of Appeals' opinion is vacated. and the judgment of the District Court of Leflore County is affirmed.

¶ 20 SUMMERS, V.C.J., and HODGES, LAVENDER, HARGRAVE and WATT, JJ., concur.

¶ 21 SIMMS, J., concurs in result.

¶ 22 KAUGER, C.J., and ALMA WILSON, J., concur in part, dissent in part.

¶ 23 OPALA, J., dissents.

OPALA, Justice, dissenting.

¶ 1 The court vacates today the Court of Civil Appeals' [COCA] opinion and affirms a nisi prius summary judgment for the defendants in a negligence case. COCA's reversal of that judgment rests on its conclusion that certain disputed fact issues in the case could not be dealt with as matters of law. Basing today's pronouncement on an independent analysis of the record, the court holds that COCA erred by relying on assertions of fact found only in the amended petition.

¶ 2 I recede from the court's view. Our sole task here is to review COCA's opinion *for conformity to the record and to the applicable law.* Adverse summary relief is not the movant's due when the adversary fails to respond by providing the nisi prius court with reference to some undisputed critical fact divinable from the material offered by *either* party. Just as the nisi prius court is enjoined to do, so too appellate tribunals bear an affirmative duty (prescribed by the standards of *Spirgis v. Circle K Stores, Inc.*[1]) to *test all* evidentiary material tendered in summary process for its legal sufficiency to support the relief sought by the movant.

¶ 3 Summary process does not authorize trial judges either to abridge a party's constitutional right to a trial by jury or to modify the essence of a common-law negligence claim. It is for these reasons that I am unable to accede to today's opinion and to the court's judgment.

# I

## THE ANATOMY OF LITIGATION

¶ 4 Marilyn Sue Weldon [Weldon], plaintiff below, was injured while a student at a beauty college. Weldon was in the process of assisting a customer into an upright position after shampooing her hair. The salon chair she was using was defective. When it failed to spring back, Weldon twisted her body in an effort to lift the chair. That movement precipitated a serious back injury. Evidentiary material indicates that other students at the beauty college also had experienced similar problems with the same malfunctioning chair.

¶ 5 The trial court gave summary judgment to the defendants. COCA's opinion reversed. The dispositive issue now pressed on certiorari is whether the evidentiary material before us will support an inference that the defective chair caused the injury. Because I am convinced that the record supports COCA's view, I would deny certiorari.

# II

## ¶ 6 THE EVIDENTIARY MATERIAL CLEARLY SHOWS THAT THERE MAY HAVE BEEN A BREACH OF THE MASTER'S COMMON–LAW DUTY TO THE PLAINTIFF WHO WAS THE BEAUTY SHOP'S APPRENTICE–SERVANT

### · A.

### STUDENTS, LIKE MEDIEVAL APPRENTICES, STAND IN THE SAME COMMON–LAW STATUS TO THE MASTER AS SERVANTS

¶ 7 The apprentice-master bond, a common-law variant of a master-servant relation, is an ancient institution of Anglo–American law which is far from alien to the Oklahoma legal system. My search of the case law yields no Oklahoma authority in which either the ancient form of apprenticeship or its modern counterpart ever received judicial exposition. The institution, which is firmly embedded in our statutory law, was given recognition in *Hillcrest v. State Industrial Court.*[2] There the court held it inapplicable because the injured student-nurse—a compensation claimant—was found not to occupy *any status* vis-á-vis the person against whom she pressed her claim.

¶ 8 One who, as a student, is rendering services to a teaching institution for the lat-

---

**1.** 1987 OK CIV APP 45, 743 P.2d 682 (approved for publication by the Supreme Court).

**2.** 1969 OK 1, 452 P.2d 781.

ter's pecuniary gain, occupies in law the status likened to that of an apprentice. In modern law, an apprentice is one who, while in the course and for the purpose of learning a trade, provides labor to the master, for the latter's pecuniary gain, in return for some advantage which may be other than regular wages.[3] The defendants' consensual deployment of Weldon's labor amounted in law to a mutual assumption of a master-apprentice bond.

¶ 9 The master-servant bond is a mixed notion of contract and status: *contract* because it is generally consensual; *but also status* because in some instances it may be imposed not as the result of an intentional private act but involuntarily as a legal consequence attached by the rule of law to the conduct and interaction of the parties.[4] "Employment status, a mixed notion of contract and status, is determinable from all the facts and circumstances in evidence."[5] "While an agreement between ... [the parties] would give rise to the relationship and might establish certain of its terms, *it is custom and public policy*—not the will of the parties—which defines the implicit framework of mutual rights and obligations [in the context of an employer/employee bond]."[6]

## B.

### AS IT WAS THE CASE AT COMMON LAW, SO TOO IN OKLAHOMA, A MASTER OWES ITS SERVANT A DUTY TO PROVIDE SAFE APPLIANCES

¶ 10 A master owes its servant a common-law duty to provide safe appliances. It is a part of the master's responsibility to use ordinary care to maintain a reasonably safe place for the servant to perform the assigned work. This rule extends to places the master constructs, prepares, or selects for the servant's use.[7]

## III

**¶ 11 THE COURT ERRS TODAY BY ITS RELIANCE ON *ROGERS v. HENNESSEE*[8]; *ROGERS* IS CLEARLY DISTINGUISHABLE ON FACTS AND ON THE APPLICABLE LAW; THE COURT'S USE OF *ROGERS'* ANALYSIS INJECTS INTO THIS CASE FLAWED LEGAL REASONING**

¶ 12 Today's pronouncement offers a flawed analysis that rests on factually distinguishable and inapposite case law. *Rogers*[9] is a true premises liability case. There, a student beautician slipped and fell after stepping into a puddle of water while walking from her work station to the supply pantry. The parties stood in an "undisputed invitor-invitee relationship."[10] *Rogers* teaches that an invitor has the duty to exercise ordinary care to keep the premises in a reasonably safe condition and to warn invitees of conditions which are in the nature of hidden dangers, traps, snares, pitfalls and the like. Liability in *Rogers* hinges on whether the occupier of the premises had timely notice of a defective and ephemeral condition—the occasional accumulation of water. There was no evidence that the owner knew or should have known of that dangerous condition caused by the water spilling from the sinks in time to remedy or avoid the defect.

---

3. *Wright v. Wilson Memorial Hospital, Inc.*, 30 N.C.App. 91, 226 S.E.2d 225, 226 (1976); *Galligan v. St. Vincent's Hospital of N.Y.*, 28 A.D.2d 592, 279 N.Y.S.2d 886, 889 (1967); *Heget v. Christ Hospital*, 26 N.J.Misc. 189, 58 A.2d 615, 616 (1948).

4. *Brewer v. Bama Pie, Inc.*, 1964 OK 58, 390 P.2d 500, 502; *Hinson v. Cameron*, 1987 OK 49, 742 P.2d 549, 557 n. 32; see Graveson, STATUS IN THE COMMON LAW, 41, 51 and 59.

5. *Bama, supra*, note 4 at 502; Graveson, *supra*, note 4 at 46–48.

6. *Hinson, supra*, note 4 at 558.

7. In W. Prosser & W. Keeton, ON TORTS § 80, 568 (W. Keeton, D. Dobbs, R. Keeton, & D. Owen 5th ed.1984) the author defines by these words a master's liability to the servant in negligence:

"Master and Servant: The specific common law duties of the master for the protection of his servants were commonly classified as follows: 1) The duty to provide a safe place to work.; 2) The duty to provide safe appliances, tools for the work ..."

8. 1979 OK 138, 602 P.2d 1033.

9. *Supra* note 8.

10. *Rogers, supra* note 8 at 1034.

¶ 13 *Rogers is not a rejection of the common-law principles that govern the employer-employee liability.* It was unnecessary there to address those rules because the case was submitted on (and the alleged facts called for application of) premises liability. Unlike in *Rogers,* this case presents a defective appliance or tool, not an ephemeral condition of the floor. A defective tool implicates a master-servant liability. This is so because the master must provide safe tools for a servant's work. Had the master-servant bond been pressed in *Rogers,* the outcome of that case would have been the same. The master bears no absolute liability for the safety of a servant. Legal responsibility is ascribed for negligence in maintaining those unsafe conditions of which the master either had knowledge or should have had knowledge. Moreover, unlike Weldon's case, Rogers' claim was terminated by the trial court's judgment after sustaining the defendant's demurrer to the evidence. In short, *Rogers* went to the jury while this case ended by summary adjudication.

## IV

¶ 14 **NEITHER UNDER THE CODE OF CIVIL PROCEDURE NOR UNDER THE PRESENT PLEADING CODE IS THE PLAINTIFF REQUIRED TO IDENTIFY SUPPORTING THEORIES OF LIABILITY**

¶ 15 The *undisputed critical fact* in Weldon's evidentiary material (upon which COCA relies for reversal) *is omitted or disregarded* in today's pronouncement. Plaintiff is punished for her failure to identify the supportive theories of liability.[11] In this approach there is plain error. Summary process will not lead to a *default* judgment just because a nonmovant had failed to challenge the adversary's material which the nisi prius court may then be free to take as true.[12] Even a totally uncontested motion will not, *ipso facto,* entitle the movant to the summary relief sought. *Spirgis v. Circle K Stores, Inc.*[13] teaches that before summary judgment may be entered, the judge must carefully examine the probative content of the record on file in the case to ascertain whether (1) the movant's material shows no substantial controversy over the material facts and (2) the dispositive facts could, at trial, be shown by admissible evidence. *The motion's legal soundness is to be tested not by the nonmovant's response at nisi prius, but rather by the sufficiency of the tendered evidentiary material to support the disposition that is sought.* Nor does *Spirgis* call upon a nonmovant to identify the theories on which summary judgment is resisted. What *Spirgis* does require is an independent *sua sponte* judicial examination of the probative material with a view to deciding whether disputed fact issues are present. No plaintiff is required to name the theory upon which

11. Neither of the two procedural regimes that followed the statutory abolition of the English writ system—the Code of Civil Procedure which governed us until 1984 and the Pleading Code which has stood in force since that time—has ever required that the plaintiff plead a theory of liability that will apply to the claim sought to be vindicated. *No theory's benefit can ever be withheld from a party plaintiff whose pleading identifies none.* At a pretrial conference or at some other procedural stage the court may ask that the pleader disclose what theories are relied on to press the claim. A party plaintiff who, as one must, has responded to a judge's call for disclosure *may then be confined to the theories chosen for the claim. This was not done in this case and the plaintiff remains uncommitted to any theory.* It is the *substantive-law regime of legal responsibility* that determines what theory, if any, will fit the adduced proof. *Doss Oil Royalty Co. v.*

*Texas Co.,* 192 Okl. 359, 137 P.2d 934, 939 (1943) (see syllabus by the court no. 4 137 P.2d at 935); *Silver v. Slusher,* 1988 OK 53, 770 P.2d 878, 881. Under the teachings of *Spirgis, supra* note 1 at 684, it was the nisi prius judge's function to test the evidentiary material and to decide what theory, if any, would support the plaintiff's claim when its essence and breadth have been measured by the probative documents submitted in the case. Had the trial court done so, it would have been compelled to conclude that the evidentiary material demonstrates *a disputed cause of action in negligence* for the master's breach of duty to provide the servant with a safe appliance for work.

12. 12 O.S.1991 § 688.

13. *Spirgis, supra* note 1 at 684.

relief is sought.[14] It is enough to state the general nature of the claim. Weldon did not have to explicitly state—*either in briefs or in her pleadings*—that she relied on the defendant's breach of a master's duty.

¶ 16 Weldon's failure to respond at nisi prius by giving the trial court a precise reference to the critical parts of probative material that supported her claim is not enough to sustain the movants' plea *for judgment sans trial*. When evaluating a defendant's plea for summary judgment, the trial judge is duty-bound to make an independent examination of the evidentiary content of the record to determine the presence of nontriable facts that defeat the claim.

## V

## STATE SUMMARY PROCESS

¶ 17 In state summary process the focus is not on facts a plaintiff might be able to prove at trial (*i.e.*, the legal sufficiency of evidence that could be adduced), but rather on whether the evidentiary material, viewed as a whole, (a) *shows* undisputed facts on some or all material issues, which facts (b) *support* but a single inference that favors the movant's quest for relief.[15] Summary process—a special procedural track to be conducted with the aid of acceptable probative substitutes[16]—is a search for undisputed material facts that would support but a single inference in the movant's favor. It is a method for identifying and isolating nontria-

ble fact issues, not a device for defeating the opponent's right to trial by jury. *Only that evidentiary material which entirely eliminates from testing by trial some or all material fact issues will provide legitimate support for nisi prius use of summary relief, in whole or in part.* All inferences to be drawn from the evidentiary material must be viewed in the light most favorable to the nonmoving party.[17] The function of summary process is not to set the stage for trial by affidavit, but to afford a method of summarily terminating a case (or eliminating from trial some of its issues) when only questions of law remain.[18]

¶ 18 The very same test that governs Oklahoma's summary adjudication process also applies when the court entertains a defendant's demurrer to plaintiff's evidence.[19] When passing on a defendant's demurrer, the judge *cannot weigh* the plaintiff's evidence; all conflicting proof is to be disregarded and plaintiff's evidence must be accepted as true. If there is proof to support the disputed plaintiff's claim, its elements must be submitted to a jury.[20]

## VI

¶ 19 **FEDERAL SUMMARY JUDGMENT PROCESS**

¶ 20 Gauged by the federal summary judgment standards—refined by the "trilogy" made up of the U.S. Supreme Court's

**14.** For an explanation of why the plaintiff need not plead *any* theory of liability for the claim that is pressed, see *supra* note 11.

**15.** *Hulsey v. Mid–America Preferred Ins. Co.*, 1989 OK 107, 777 P.2d 932, 936 n. 15. An order that grants summary relief disposes solely of law questions. It is hence reviewable *de novo*. An appellate court claims for itself plenary, independent and nondeferential authority to re-examine a trial court's legal rulings. *Kluver v. Weatherford Hospital Auth.*, 1993 OK 85, 859 P.2d 1081, 1084. Oklahoma's summary adjudication process is *similar but not identical* to that followed in the federal judicial system. *See Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

**16.** " 'Acceptable probative substitutes' are those which may be used as 'evidentiary materials' in the summary process of adjudication." *Jackson*

*v. Oklahoma Memorial Hospital*, 1995 OK 112, 909 P.2d 765, 773 n. 35; *Gray v. Holman*, 1995 OK 118, 909 P.2d 776, 781 n. 16 (quoting from *Seitsinger v. Dockum Pontiac Inc.*, 1995 OK 29, 894 P.2d 1077, 1080–81); *Davis v. Leitner*, 1989 OK 146, 782 P.2d 924, 926–27.

**17.** *Carmichael v. Beller*, 1996 OK 48, 914 P.2d 1051, 1053.

**18.** *Russell v. Board of County Com'rs, Carter County*, 1997 OK 80, 952 P.2d 492, 503; *Bowers v. Wimberly*, 1997 OK 24, 933 P.2d 312, 316; *Stuckey v. Young Explor. Co.*, 1978 OK 128, 586 P.2d 726, 730.

**19.** *Roach v. Atlas Life Ins. Co.*, 1989 OK 27, 769 P.2d 158, 163.

**20.** *Roach, supra* note 19 at 163.

teachings in *Celotex Corp. v. Catrett*,[21] *Anderson v. Liberty Lobby, Inc.*,[22] and *Matsushita Electric Industrial v. Zenith Radio Corp.*[23]—Weldon's negligence claim *might not pass legal muster* and hence end up in summary judgment for the defendant.

¶ 21 The Court's 1986 trilogy announced precise standards for determining the existence of a genuine fact issue. *Matsushita*, the first of the trilogy, opened the door to a much-increased degree of discretion in handling quests for summary judgment.[24] *Liberty Lobby* further extended that latitude by allowing the directed-verdict standard to assist in determining the existence of a genuine material fact issue.[25] In both *Liberty Lobby* and *Matsushita* the Court made it more difficult for a nonmoving party—having the burden of persuasion at trial—to meet its probative onus in summary judgment process.[26] The former opinion requires the trial judge to inquire whether a *jury could reasonably find the evidence "clearly convincing"* as to a particular issue. The Court rejected the notion that a nonmovant could avoid summary judgment and meet its burden in that process by showing the mere existence of "some" factual dispute between the parties. Rather, *the nonmoving party must identify a factual dispute that is genuine and involves a material issue.* Underscored was the notion that not all evidentiary conflicts constitute "genuine" disputes of fact.[27] Nonmoving parties can establish a genuine issue of fact by tendering probative material that would be sufficient for a *"reasonable jury"* to return a verdict in favor of the nonmoving party.[28]

¶ 22 Commentators have noted that in the aftermath of the trilogy's jurisprudence the post–1986 federal summary process

21. 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *Celotex* marked a shift in the burden of proof in federal summary practice. There, a widow sued a manufacturer for the asbestos-related death of her husband. The Celotex Corporation moved for summary judgment based on the widow's failure to produce evidence that her husband had been exposed to its products. The company argued that the widow's response consisted of inadmissible hearsay. The Court found that summary judgment would be mandated if the widow filed, after adequate time for discovery, to present evidence she submitted was sufficient to defeat the motion for summary judgment. In short, if the issue is one on which the movant does not bear the burden of proof, and if, after an adequate time for discovery has passed, the party respondent fails to make a showing sufficient to establish the existence of an element essential to its case, summary judgment is the movant's due.

22. 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (a publisher and author moved for summary judgment in a libel suit brought against them by a non-profit organization).

23. 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (the defendants in a civil antitrust case moved for summary judgment against the plaintiffs, who alleged that the defendants had engaged in a predatory pricing conspiracy).

24. The Court in *Matsushita* weighed the evidence before it, concluded that plaintiffs' claims were implausible, and required them to "come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Matsushita, supra* note 23, 475 U.S. at 587, 106 S.Ct. at 1356.

25. In *Liberty Lobby* the Court stated that a "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Supra* note 22, 477 U.S. at 249, 106 S.Ct. at 2510–2511. In other words, a judge must evaluate the sufficiency of the evidence without weighing its credibility. *Id.* 477 U.S. at 255, 106 S.Ct. at 2513–2514.

26. In *Liberty Lobby, supra* note 22, 477 U.S. at 252, 106 S.Ct. at 2512, the Court stated that "[t]he *mere existence of a scintilla of evidence in support of the plaintiff's position will be sufficient* ..." (Emphasis supplied.) Similarly, in *Matsushita, supra* note 23, 475 U.S. at 586, 106 S.Ct. at 1356, the Court stated that in order to establish a genuine issue for trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."

27. *Liberty Lobby, supra* note 22, 477 U.S. at 248, 106 S.Ct. at 2510.

28. *Liberty Lobby, supra* note 22, teaches that if the nonmoving party's affidavits present material that *"is of insufficient caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence"* there can be no genuine issue of fact. *Id.* 477 U.S. at 254, 106 S.Ct. at 2513 (emphasis supplied). For the first time, the Court equated the test for determining whether a genuine factual dispute exists with the test for granting a directed verdict at trial. *Id.* 477 U.S. at 251, 106 S.Ct. at 2512.

clearly constitutes a judiciary's intrusion into an area formerly viewed as almost exclusively within the jury's province.[29] According to one writer, the expansive *Liberty Lobby* teachings raise grave concerns about a civil litigant's constitutional right to a jury trial.[30] *Suffice it to say that these standards of the U.S. Supreme Court do not apply to state-court cases for the reasons to be discussed infra in Part VII.*

## VII

¶ 23 **THE CONSTITUTIONAL RIGHT TO TRIAL BY JURY IN A CIVIL CASE UNDER OKLAHOMA LAW**

¶ 24 Today's summary judgment analysis constitutes an impermissible judicial intervention in the fact-finding process. It violates the plaintiff's fundamental-law right to trial by jury under the standards of Art. 2 § 19, Okl. Const.[31] That section keeps "inviolate" the common-law norms for drawing the line at which submission to the triers is a party's due. Because these standards are

enshrined in the state constitution, they cannot be abrogated (impaired or abridged) by legislative or judicial action.[32]

¶ 25 In contrast to Oklahoma's system, the right to a jury in federal courts is governed by the Seventh Amendment to the U.S. Constitution.[33] The *primary purpose of the Seventh Amendment* is not quite the same as that of Art. 2 § 19. It is to keep in effect the common-law line of demarcation between the duties of the court and those of the jury. Except as modified by the federal constitution itself, the right to trial by jury was frozen as it stood in the 1787 English jurisprudence. The trilogy's 1986 reformulation of traditional summary judgment procedure marks a significant departure from the U.S. Supreme Court's past Seventh–Amendment construction.[34] *While the latter's jurisprudence is indeed binding upon federal courts, it does not affect the process of summary adjudication to be applied in the state courts. Because the Seventh Amendment is unenforceable against them, the states remain utterly free from its restraints.*[35]

29. Dan W. Hotsenpiller, Comment, *Anderson v. Liberty Lobby, Inc.: Federal Rules Decision or First Amendment Case*, 59 U.Colo.L.Rev.933, 953–55.

30. *Hotsenpiller, supra* note 29 at 953–54.

31. The pertinent terms of Art. 2 § 19, Okl. Const., provide:

 "The right of trial by jury shall be and remain inviolate ..." (Emphasis supplied.)

32. *Seymour v. Swart*, 1985 OK 9, 695 P.2d 509, 511. The fundamental law's mandate for trial by jury has reference to the right that existed in the territories at the time the state constitution was adopted. That right was not predicated upon territorial statutes, but rather upon "the federal constitution and the course of the common law." *Maryland National Insurance Co. v. District Court*, 1969 OK 73, 455 P.2d 690, 692; *Keeter v. State ex rel. Saye*, 82 Okl. 89, 198 P. 866, 868–69 (1921).

33. The pertinent part of the Seventh Amendment to the U.S. Constitution is:

 "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved ..."

34. In applying the Seventh Amendment, the Court has traditionally taken an historical approach, which it combined with elements of

functionality. F. James & G. Hazard, CIVIL PROCEDURE §§ 8.2, 8.3, 8.11 (3rd ed.1985); 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 92 at 312. If the claim (or its historical analogue) in 1791 was one at law, a jury is generally available to the claimant as of right. *Tull v. United States*, 481 U.S. 412, 418, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987). If the claim (or its historical counterpart) was one in equity in 1791, a jury trial is not required under the Seventh Amendment (*Tull, supra*), although the judge may impanel an advisory jury. Fed. R.Civ.P. 39(c). When the claim and relief sought intermingles components that were historically both legal and equitable, a frequent consequence of the merger of law and equity accomplished in the federal courts by the rules of civil procedure, the claimant ordinarily may have a jury trial at least for the legal aspects of the case-so long as providing a jury trial is not impractical or does not vitiate the essential character of the action. *Wright, supra* at § 92.

35. In *Gasperini v. Center For Humanities, Inc.*, 518 U.S. 415, 432, 116 S.Ct. 2211, 2222, 135 L.Ed.2d 659 (1996), the Court stated that "[t]he Seventh Amendment ... governs proceedings in federal court, but not in state court ..." (emphasis added), citing *Walker v. Sauvinet*, 92 U.S. 90, 92, 23 L.Ed. 678 (1875). *See also Pearson v. Yewdall*, 95 U.S. 294, 24 L.Ed. 436 (1877); *Maryland, supra* note 32 at 692; *Harada v. Burns*, 50 Haw. 528, 50 Haw. 588, 445 P.2d 376, 380 (1968).

# VIII

## SUMMARY

¶ 26 Judgment may not be entered for a movant in the summary process unless the trial judge has *independently examined the record* and determined an absence of material fact issues submissible to the jury. Under Art. 2 § 19, Okl. Const., *after* COCA has made its own re-assessment of the record and reversed a nisi prius summary judgment for legal error, this court's role on certiorari stands limited to testing the appellate decision for its conformity to the law and to the record. This court's function does not include that of recombing the probative material with a view to imposing on the nonmovants either the duties of pleading or those of proof which they did not bear at nisi prius.[36] Weldon's probative material in this record presents facts, which, if true, support a servant's claim against her master for negligence in failing to provide a safe appliance for her use at work.

¶ 27 Because Weldon's nisi prius and appellate reliance on the presence of material fact issues is amply supported by the case record's probative material and is legally sufficient as a basis for COCA's reversal of summary judgment, I would deny certiorari. Weldon claims she was provided a defective chair—an appliance whose malfunction caused her harm. Her claim that the master knew or should have known about this condition is unrefuted by the defendants' evidentiary documents.[37]

¶ 28 On this record, it is clear that the Court of Civil Appeals did not err when it held that the summary judgment should be reversed and the cause remanded for trial.

---

36. For an explanation of why the plaintiff need not identify a theory of liability that will support the pressed claim, see *supra* note 11.

37. As for the plaintiff's knowledge that the chair she was using was indeed defective—which the court invokes in support of today's summary judgment's affirmance—it suffices to say that by the state constitution's command both the defense of contributory negligence and that of assumption of risk present a fact question for the triers. Art. 23 § 6, Okl. Const. A plaintiff's familiarity with a flaw in the source of harm-

dealing force is neither an absolute bar to recovery nor a barrier to the court's submission of a negligence claim for the jury's evaluation of the actors' legal responsibility. *Brown v. Nicholson*, 1997 OK 32, 935 P.2d 319, 322; *Byford v. Town of Asher*, 1994 OK 46, 874 P.2d 45, 54, (Opala, J., concurring); *Jack Healey Linen Service Co. v. Travis*, 1967 OK 213, 434 P.2d 924, 926–927; *Henryetta Construction Co. v. Harris*, 1965 OK 88, 408 P.2d 522, 531 (Irwin, J., supplemental opinion on rehearing).